[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 5, 2004
THOMAS K. KAHN
CLERK

_____

No. 03-14828

_____

D. C. Docket No. 00-01334-MD-FAM

LEONARD J. KLAY, M.D.,
ALL PLAINTIFFS,
PRICE PLAINTIFFS, PRICE, SESSA,
KATZ & YINGLING,
SANDRA JOHNSON,
PATRICIA FREYRE, et al.,

                                                    Plaintiffs-Appellees,

REGINA JOI PRICE, et al.,

                                                    Plaintiffs,

versus

ALL DEFENDANTS, et al.,

                                                    Defendants,

PACIFICARE HEALTH SYSTEMS, INC.,
HUMANA, INC.,
COVENTRY HEALTH CARE, INC.,
ANTHEM HEALTH PLANS, INC.,
PRUDENTIAL INSURANCE COMPANY OF AMERICA,
UNITED HEALTHCARE,
UNITED HEALTH GROUP,

HUMANA HEALTH PLAN, INC.,
WELLPOINT HEALTH NETWORKS, INC.,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____
(November 5, 2004)

Before ANDERSON and BIRCH, Circuit Judges, and LAND[*], District Judge.

BIRCH, Circuit Judge:

This appeal requires us to determine the propriety of a district court order in light of prior appeals and the scope to be afforded to broad arbitration clauses. Based on our previous rulings and existing precedent, the district court refused to compel arbitration of various claims asserted by plaintiffs-appellees and declined to stay litigation of nonarbitrable claims. Because we previously affirmed the district court's refusal to compel arbitration of RICO conspiracy and aiding and abetting claims in a decision not disturbed by the United States Supreme Court, the law of the case doctrine compels us to affirm the district court's order regarding

_____

[*] Honorable Clay D. Land, United States District Judge for the Middle District of Georgia, sitting by designation.

these claims. With respect to the scope to be given to broad arbitration clauses, a matter not decided previously, we also affirm the district court's ruling that broad arbitration clauses cannot be extended to compel parties to arbitrate disputes they have not agreed to arbitrate.

## I. BACKGROUND

Plaintiffs-appellees, a group of physicians acting on behalf of themselves and others similarly situated ("physicians"), sued defendants-appellants, a collection of health maintenance organizations ("HMOs"), on various grounds—including violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), breaches of various state prompt pay statutes, and claims for quantum meruit, breach of contract, and unjust enrichment. At bottom, the physicians alleged that the HMOs, individually and collectively by conspiring and aiding and abetting each other, failed to properly reimburse physicians for services rendered. Because the facts of this case have been detailed in prior opinions, see PacifiCare Health Sys., Inc. v. Book, 538 U.S. 401, 402-03, 123 S. Ct. 1531, 1533-34 (2003); In Re Humana Inc. Managed Care Litig., 285 F.3d 971, 973 (11th Cir. 2002); In Re Managed Care Litig., 132 F. Supp. 2d 989, 992 (S.D. Fla. 2000), we recount here only those facts relevant to this appeal.

The physicians' complaint alleged ten claims against HMOs: (1) conspiracy

3

to commit RICO violations under 18 U.S.C. § 1962(d); (2) aiding and abetting RICO violations under 18 U.S.C. § 2;[1] (3) direct RICO violations under 18 U.S.C. §§ 1962 (a) and (c); (4) RICO declaratory and injunctive relief under 18 U.S.C. § 1964(a); (5) breach of contract; (6) unjust enrichment; (7) violations of various state prompt pay statutes; (8) violations of the California Business and Professional Code; (9) violations of the Connecticut Unfair Trade Act; and (10) violations of the New Jersey Consumer Fraud Act. In response, HMOs moved to compel arbitration of these claims pursuant to arbitration agreements that had been signed between some of the physicians and some of the HMOs. See In Re Humana Inc. Managed Care Litig., 285 F.3d at 973 & n.1 ("[S]ome of the doctors had contracts with some of the HMOs; some of those contracts had arbitration clauses."). In deciding which of physicians' claims must be arbitrated, the district court made four rulings:

> First, the court held that claims between plaintiffs and defendants who are both signatories to contracts containing enforceable arbitration clauses must be arbitrated. Second, relying primarily on our opinion in Paladino v. Avnet Computer Technologies, Inc., 134 F.3d 1054 (11th Cir. 1998), the court found that those arbitration clauses that exclude punitive damages are unenforceable in this suit because they preclude recovery of treble damages under RICO; therefore, an HMO may not compel arbitration of a RICO suit under such an arbitration clause. Third, the court determined that an HMO may not invoke its arbitration clause to compel arbitration of an aiding-and-abetting charge regarding a doctor's contractual rights with a different HMO.

---

[1] The claims of conspiracy to violate RICO and aiding and abetting RICO violations shall be collectively referred to as "indirect RICO claims."

4

> Fourth, the court held that exceptions to the general rule that a non-party to a contract may not invoke the contract—exceptions we described in MS Dealer [Serv.] Corp. v. Franklin, 177 F.3d 942 (11th Cir. 1999)—do not apply in the present case; thus, an HMO that is not a signatory to a particular contract may not invoke that contract's arbitration clause to compel arbitration.

In Re Humana Inc. Managed Care Litig., 285 F.3d at 973 (footnotes omitted). On appeal, we "affirm[ed] in its entirety the district court's order for the reasons set forth in its comprehensive opinion found at 132 F. Supp. 2d 989 (S.D. Fla. 2000)." Id. at 973-74.

HMOs then appealed to the United States Supreme Court with respect to the district court's second finding, i.e. that HMOs could not compel arbitration of RICO claims if the arbitration clauses excluded punitive damages awards because such clauses were unenforceable.[2] The Supreme Court reversed our decision and held that whether punitive damages limitations in the arbitration clauses precluded an award of treble damages, and whether such a finding would render the arbitration agreements unenforceable, should be decided by an arbitrator in the first instance. PacifiCare Health Sys., Inc., 538 U.S. at 407. As a result, we remanded this case to the district court "for further proceedings in accordance with the Supreme Court's decision." In Re Humana Inc. Managed Care Litig., 333 F.3d

---

[2] At oral argument, HMOs admitted that they only sought certiorari with respect to this issue and did not also appeal the district court's other rulings, some of which they challenge in this appeal.

5

1247, 1248 (11th Cir. 2003).

While the issue of the arbitrability of RICO claims in light of contractual punitive damages limitations was on appeal, the physicians amended their complaint to add two new defendants, twelve new physician-plaintiffs, and six new medical association plaintiffs. They also amended their complaint to clarify the general allegations of conspiracy found in their prior amended complaint.[3] Following our remand, HMOs again moved to compel arbitration based on the Supreme Court's PacifiCare opinion. The district court ruled that: (1) direct RICO claims must be arbitrated pursuant to PacifiCare regardless of damages limitations in the arbitration agreements; (2) indirect RICO claims remain nonarbitrable pursuant to prior decisions which had not been disturbed by PacifiCare; (3)

---

[3] The parties disagree about whether the physicians' amended complaint really averred anything new. HMOs admitted that the "amended complaint clarified plaintiffs' theory of RICO conspiracy and aiding-and-abetting liability." Appellants' Br. at 10-11 (emphasis added). HMOs argue, however, that the general allegations of conspiracy found in physicians' first amended complaint did not subsume the more specific allegations of conspiracy found in the second amended complaint, i.e. that because all HMOs were concertedly failing to reimburse physicians properly, they conspired to effectively deny physicians the option to decline rendering services for a particular HMO in favor of contracting with a competing HMO. See Appellants' Reply Br. at 21-22. The physicians disagree and point to similar language found in both amended complaints with respect to HMOs' conspiracy. See Appellee's Br. at 19-20. The district court agreed with the physicians. See In Re Managed Care Litig., __ F. Supp. 2d __, __ (S.D. Fla. Sept. 15, 2003) ("[T]he 'new' allegations differ more in degree than in kind."); see also Klay v. Humana, Inc., 382 F.3d 1241, 1241 n.1 (11th Cir. 2004) ("[T]he substance of the allegations is the same across all three of the plaintiffs' complaints.").

6

nonparticipating provider claims ("non-par claims")[4] are nonarbitrable if raised by physicians in the absence of either (i) a contract between the physician and the HMO regarding the services from which the claim arose or (ii) an assignment to a physician of the claim by a subscriber who had a contract with the HMO; (4) claims asserted by medical associations are arbitrable only to the extent that the claims of their members, on whose behalf the medical associations are raising the claims, are arbitrable; (5) the range of arbitrable claims is limited to those claims which arose during the effective dates of the arbitration contracts; and (6) litigation of nonarbitrable claims pending before the district court would not be stayed pending arbitration of claims deemed arbitrable. See In Re Managed Care Litig., __ F. Supp. 2d __, __ (S.D. Fla. Sept. 15, 2003). On appeal, HMOs argue that the district court erred by not directing arbitration of all indirect RICO claims, non-par claims, medical association claims, and claims outside of the effective dates of relevant contracts containing arbitration clauses and by not granting a stay of

---

[4] These claims arise when a patient receives care from a physician who is outside of an HMO's network of preferred physicians. This means the physician does not have a contract with the HMO to provide services for that particular patient. When a patient receives care from an out-of-network physician, the physician can attempt to receive payment directly from the HMO as a courtesy to the patient or the physician can receive a direct assignment of the patient's contractual right to reimbursement from the HMO. Because the treating physician does not participate in the patient's plan, such claims for reimbursement are referred to as "non-par" claims. These claims become more complicated in this case because some doctors have both contractual and non-par claims against some HMOs depending on the coverage of the patient from whom the claim for reimbursement arose.

7

litigation pending the resolution of arbitrable claims.

## II. DISCUSSION

Because the issue of the arbitrability of indirect RICO claims was decided in our prior opinion, we will address it first under law of the case principles. Second, we will address the district court's refusal to compel arbitration of certain non-par claims, medical association claims, and claims outside the effective dates of contracts. Third, we will review the district court's denial of a motion to stay of litigation of nonarbitrable claims.

A. Indirect RICO Claims and Law of the Case

The law of the case doctrine "'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816, 108 S. Ct. 2166, 2177 (1988) (citation omitted). This doctrine is designed to further important goals vital to just and efficient judicial process, including the provision of an end to litigation, the discouragement of "panel shopping," and the promotion of consistency in rulings between courts. Burger King Corp. v. Pilgrim's Pride Corp., 15 F.3d 166, 169 (11th Cir. 1994). The doctrine does not bar consideration of issues that could have been raised in a prior appeal but were not; however, the doctrine does apply not only as to "matters

8

'decided explicitly' but also as to those 'decided by necessary implication.'"

DeLong Equip. Co. v. Washington Mills Electro Minerals Corp., 990 F.2d 1186,

1196 (11th Cir.) (citations omitted), modified on other grounds, 997 F.2d 1340

(11th Cir. 1993). The law of the case doctrine should guide a court in its discretion

to hear subsequent appeals on a particular issue. See Arizona v. California, 460

U.S. 605, 618, 103 S. Ct. 1382, 1391 (1983). The doctrine, however, does not

limit the court's power to revisit previously decided issues when (1) new and

substantially different evidence emerges at a subsequent trial; (2) controlling

authority has been rendered that is contrary to the previous decision; or (3) the

earlier ruling was clearly erroneous and would work a manifest injustice if

implemented. Wheeler v. City of Pleasant Grove, 746 F.2d 1437, 1440 (11th Cir.

1984) (per curiam).

With these standards in mind, we must determine whether our prior decision

constitutes law of the case as to indirect RICO claims and whether any of the

Wheeler exceptions apply. First, HMOs argue that the district court and our court

only decided that HMOs could not compel arbitration based on the contractual

rights of third parties. Accordingly, they contend that we did not reach the issue of

whether the indirect RICO claims actually did relate solely to the contractual rights

of third parties. HMOs maintain that, rather than relating to third party contractual

9

rights, the indirect RICO claims touch matters within the parties' arbitration agreements and therefore are arbitrable. Second, HMOs argue alternatively that even if the issue was previously reached, our prior opinion cannot be controlling law of the case because the amendment of the complaint, the addition of new defendants, and the decision in PacifiCare mandate we review our prior decision.

HMOs' first argument—that our previous decision did not reach the issue of the arbitrability of indirect RICO claims—is without merit. A review of our decision reveals that we affirmed two findings of the district court that bear on indirect RICO claims: (1) "that an HMO may not invoke its arbitration clause to compel arbitration of an aiding-and-abetting charge regarding a doctor's contractual rights with a different HMO . . . [and (2) that] an HMO that is not a signatory to a particular contract may not invoke that contract's arbitration clause to compel arbitration." In Re Humana Inc. Managed Care Litig., 285 F.3d at 973. After making this determination, we affirmed the district court's refusal to compel arbitration of indirect RICO claims. Id. at 977. Necessarily implicit in that ruling was a finding that indirect RICO claims did relate solely to third party contractual rights. Moreover, we directly applied our decisions to the parties in several examples which also implied this finding. See id. at 973 nn. 4-5. Realizing that a prior decision is law of the case as to matters decided explicitly and by necessary

10

implication, we find that our prior affirmation of the district court constitutes law of the case here and forecloses HMOs' argument that indirect RICO claims must be arbitrated.[5] See Burger King Corp., 15 F.3d at 169 (finding that prior decision allowing recovery of attorney's fees was law of the case by "necessary implication" which foreclosed subsequent appeal that the case was not sufficiently "exceptional" to award attorney's fees under Lanham Act); Terrell v. Household Goods Carriers' Bureau, 494 F.2d 16, 19 (5th Cir. 1974) (finding that law of case doctrine precluded review of causation issues where previous panel had affirmed liability which necessarily implied a finding on causation).

HMOs' alternative arguments—that an exception to the law of the case doctrine applies—are equally without merit. First, despite HMOs' allegations to the contrary, the district court found, and we agree, that physicians' amended complaint did not add anything new which would call into question our prior ruling regarding indirect RICO claims. See supra n.3. A review of the first and second amended complaints reveals that both contained the same basic allegations for the conspiracy and aiding and abetting claims; moreover, HMOs admit that the second

_____

[5] We note that while the law of the case doctrine does not bind nonparties, our prior decision does constitute precedent which we must follow in subsequent proceedings. See Morrow v. Dillard, 580 F.2d 1284, 1289 (5th Cir. 1978) (stating that a court's prior decision "establishes a precedent" which the court "will, normally, apply to the same issues in subsequent proceedings in the same case"). Thus, our prior decision regarding indirect RICO claims applies to both parties and nonparties to the original decision, under law of the case principles as to the former and under the rules of precedent as to the latter.

amended complaint "clarified" physicians' position rather than fundamentally altering their claims. See id. Further, the addition of new parties did not substantially change the nature of the indirect RICO allegations. Accordingly, we reject HMOs' argument that the law of the case should be abandoned because new and substantially different evidence mandates a departure from the doctrine. See Louisville & Nashville R.R. Co. v. Higdon, 234 U.S. 592, 598-99, 34 S. Ct. 948, 950 (1914) (affirming refusal to allow subsequent appeal under the law of the case doctrine where an amended pleading "was simply an elaboration of the [pleading] presented" in an earlier appeal); De Tenorio v. Lightsey, 589 F.2d 911, 917 (5th Cir. 1979) (refusing to revisit prior findings because "plaintiff has presented nothing new in her amended complaint").[6] Second, contrary to HMOs' arguments, PacifiCare did not affect our previous ruling regarding indirect RICO claims because the Court only focused on whether remedial limitations in arbitration clauses prevented arbitration of direct RICO claims; the scope to be afforded arbitration agreements in the indirect RICO context was not before the Court. See supra n.2. Therefore, the exception that the law of the case doctrine is inapplicable

---

[6] In a separate brief, adopted by the other HMOs, PacifiCare argues that the amendments to physicians' complaint mandate we reconsider our decision that the MS Dealer exception, which would allow an HMO that is a nonsignatory to an arbitration agreement with a physician to invoke that agreement to compel arbitration of a physician's claim against it, does not apply in this case. Because we find that the amended complaint does not allege anything new, that HMOs did not appeal our previous ruling on the MS Dealer issue, and that the Supreme Court's PacifiCare opinion did not affect our ruling, we reject PacifiCare's argument.

12

when controlling authority controverts a prior decision does not apply here. <u>See</u>

<u>United States v. M.C.C. of Florida, Inc.</u>, 967 F.2d 1559, 1562 (11th Cir. 1992).

Because none of the three exceptions to the law of the case doctrine listed in

<u>Wheeler</u> apply, our prior decision regarding indirect RICO claims is controlling in

this appeal.

While not an inexorable command, the law of the case doctrine provides

stability and finality in litigation, which are crucial cornerstone values for

developing a just and efficient judicial process. <u>Litman v. Massachusetts Mut. Life</u>

<u>Ins. Co.</u>, 825 F.2d 1506, 1511 (11th Cir. 1987). Here, we previously decided, if

not explicitly then by necessary implication, that HMOs may not compel

arbitration of physicians' indirect RICO claims. HMOs' failure to seek <u>en</u> <u>banc</u>

review or <u>certiorari</u> with respect to these issues caused our previous ruling to

become law of the case. <u>See</u> <u>Silverberg v. Paine, Webber, Jackson & Curtis, Inc.</u>,

724 F.2d 1456, 1457 (11th Cir. 1983) (per curiam). Because HMOs have failed to

show that an exception mandates our departure from the law of the case doctrine,

we cannot reconsider our previous ruling.[7] Accordingly, the district court properly

held that the law of the case doctrine precludes reconsideration of our previous

---

[7] Absent an erroneous ruling that would work manifest injustice, consistency between appellate panels is mandated even if a subsequent panel would have decided a case differently than the prior panel. <u>See</u> <u>United States v. Burns</u>, 662 F.2d 1378,1384 (11th Cir. 1981).

determination that HMOs cannot compel physicians to arbitrate their indirect RICO claims.

B.  District Court's Refusal to Compel Arbitration

We review a district court's denial of a motion to compel arbitration de novo.  Musnik v. King Motor Co. of Fort Lauderdale, 325 F.3d 1255, 1257 (11th Cir. 2003).  The determination of the propriety of a motion to compel arbitration pursuant to Section 4 of the Federal Arbitration Act (FAA)[8] is a two-step inquiry.  The first step is to determine whether the parties agreed to arbitrate the dispute.  Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626, 105 S. Ct. 3346, 3353 (1985).  We must make this determination "by applying the 'federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [FAA].'"[9]  Id. (citation omitted).  This inquiry must be undertaken against the background of a "liberal federal policy favoring arbitration agreements."  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1,

---

[8] 9 U.S.C. § 4 (2004).  The Act provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  Id.

[9] The FAA applies to any contract "affecting" interstate commerce.  Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 273-74, 115 S. Ct. 834, 839 (1995); see 9 U.S.C. § 2 (FAA covers any "contract evidencing a transaction involving commerce").  It is undisputed that the contracts at issue in this case affect interstate commerce and that the precedent construing the FAA applies.

14

24, 103 S. Ct. 927, 941 (1983) ("[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration."). Under this policy, it is the role of courts to "rigorously enforce agreements to arbitrate." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221, 105 S. Ct. 1238, 1242 (1985). Because arbitration is a matter of contract, however, the FAA's strong proarbitration policy only applies to disputes that the parties have agreed to arbitrate. Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 57, 115 S. Ct. 1212, 1216 (1995). In the absence of an agreement to arbitrate, a court cannot compel the parties to settle their dispute in an arbitral forum. See AT&T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 648, 106 S. Ct. 1415, 1418 (1986) (citation omitted); see Volt Info. Sci., Inc. v. Bd. of Tr. of Leland Stanford Junior Univ., 489 U.S. 468, 479, 109 S. Ct. 1248, 1256 ("Arbitration under the [FAA] is a matter of consent, not coercion . . . ."). The second step in ruling on a motion to compel arbitration involves deciding whether "legal constraints external to the parties' agreement foreclosed arbitration." Mitsubishi Motors Corp., 473 U.S. at 628, 105 S. Ct. at 3355.[10]

---

[10] Because the parties dispute only the scope of the arbitration agreements and not their enforceability, we will not discuss this second step of the analysis.

### 1. Non-Par Claims

With these general principles in mind, we turn to the district court's ruling that non-par claims are only arbitrable if: (1) the physician asserting the non-par claim has a contract containing an arbitration clause with the target HMO that covers the rendering of services from which the claim arose; or (2) the physician was assigned a claim for reimbursement by a patient who has a contract with the target HMO. First, HMOs argue that the broad arbitration clauses[11] signed by physicians are sufficient to cover any non-par claims brought by physicians, even if the contract they signed does not cover the rendition of services from which the claim arose. Second, HMOs argue that all of physicians' non-par claims, even those the district court exempted from arbitration as claims held by the physicians in their own right,[12] are derivative of a patient-subscriber's contract and therefore arbitrable. We will address each argument in turn.

First, HMOs' attempt to expand the scope of various arbitration agreements

---

[11] While the contracts signed between physicians (and patients) and HMOs vary in their particular terms, they have in common the substance of broadly worded arbitration clauses. For example, PacifiCare sought to compel arbitration based on a contract which called for arbitration of "any controversy, dispute, or claim arising out of the agreement." See In Re Managed Care Litig., 132 F. Supp. 2d at 1005. Because we find that even the broadest arbitration clauses could not compel arbitration of non-par claims in this instance, we need not parse through the language used in each HMO's arbitration agreements.

[12] The district court held that physicians' claims which arose under quasi-contractual theories were not arbitrable because the claims belonged to the physicians in their own right and not on the basis of an assignment.

16

to cover the rendition of services outside of the services contemplated by a particular contract is ineffectual. Because arbitration can only be compelled when the subject of the dispute has been agreed to be settled by arbitration, having one contract which contains a broad arbitration agreement does not necessarily mean that arbitration can be compelled when the subject of the dispute arises from a separate contract which does not have an arbitration clause. Seaboard Coast Line R.R. Co. v. Trailer Train Co., 690 F.2d 1343, 1352 (11th Cir. 1982) (refusing to compel arbitration based on broad arbitration clause found in a license contract between the parties when the underlying claim was for breach of a separate lease contract which did not contain an arbitration clause). While we acknowledge that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, see Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25, 103 S. Ct. at 941, no doubt has been cast upon whether physicians agreed to arbitrate non-par claims; it is undisputed that physicians did not sign contracts containing arbitration clauses for the provision of the services from which the non-par claims have sprung. In effect, physicians are nonsignatories of arbitration agreements with respect to these non-par claims and yet HMOs are attempting to compel arbitration as if they were signatories. Implicit in our previous decision was a rejection of this argument. See In Re Humana Inc. Managed Care Litig., 285 F.3d at 973 (finding that "an HMO

17

that is not a signatory to a particular contract may not invoke that contract's arbitration clause to compel arbitration"). Moreover, HMOs drafted the arbitration agreements signed by the physicians with whom they have contracts and represented to physicians without contracts that they would be compensated for providing out-of-network services. If HMOs wanted the benefit of arbitration for disputes arising from non-par claims, they could have contracted with physicians for it. See Mastrobuono, 514 U.S. at 62-63, 115 S. Ct. at 1219 (construing scope of arbitration agreement against the party that initiated the contract). Arbitration is at its core a matter of contract, and here it is clear that physicians did not agree to arbitrate these non-par claims. See EEOC v. Waffle House, Inc., 534 U.S. 279, 294, 122 S. Ct. 754, 764 (2002). Accordingly, the district court properly refused to compel arbitration of non-par claims asserted by physicians based on arbitration agreements they had signed regarding the provision of services unrelated to the non-par claims.

HMOs' second argument—that the district court should have compelled arbitration of non-par claims asserted by physicians under quasi-contract and statutory causes of action because these claims stemmed from claims assigned to them by patient-subscribers who had signed arbitration agreements—fails on similar grounds. Because physicians asserting non-par claims do not have a

18

contractual relationship with the HMO, they can only be compelled to arbitrate non-par claims to the extent that they received the right to reimbursement by assignment from patient-subscribers who had signed arbitration agreements. See DiMercurio v. Sphere Drake Ins. PLC, 202 F.3d 71, 81 (1st Cir. 2000). However, as with the non-par claims for services rendered outside of the contractual relationship established between physicians and HMOs, the non-par claims asserted by physicians under quasi-contract and statutory theories necessarily stem from services rendered outside of the contracts established between patient-subscribers and HMOs.[13] Because these claims are thus held by physicians independent of the patient-subscriber contracts, HMOs may not argue that the scope of the arbitration agreements in the patient-subscriber contracts should be extended to compel arbitration. See American Bankers Ins. Co. of Fla. v. First State Ins. Co., 891 F.2d 882, 885 (11th Cir. 1990) (per curiam) (finding unjust enrichment claims existed independently of contractual claims). Thus, the district

---

[13] If the services rendered were covered by the contract between patient-subscriber and the HMO, then the physicians' claims would be arbitrable under the district court's order that "any claims that necessarily rely upon subscriber contracts with arbitration clauses must be arbitrated." In Re Managed Care Litig., __ F. Supp. 2d at __. HMOs, however, have represented that physicians will be reimbursed for supplying medically necessary treatments to patient-subscribers even if such treatments are not covered by contract. Thus, because the physicians' non-par claims in this instance are not based on any contract to provide the particular treatments, quasi-contract and statutory theories are the physicians' only recourse to recover for these services. See Flint v. ABB, Inc., 337 F.3d 1326, 1331 n.2 (11th Cir. 2003) (explaining that quasi-contract claims are the only claims available in the absence of a specific contractual obligation to perform services) cert. denied, __ U.S. __, 124 S. Ct. 1507 (2004).

court properly found nonarbitrable non-par claims asserted by physicians under quasi-contract and statutory causes of action in the absence of an assignment from a patient-subscriber who had signed an arbitration agreement.

2. Medical Association Claims

HMOs also argue that the district court erred by refusing to compel arbitration of the indirect RICO and non-par claims brought by medical association plaintiffs on behalf of some of their members. Specifically, as they argued regarding physicians' attempt to litigate these claims, HMOs argue that these claims brought by the medical associations are within the scope of the various arbitration agreements signed by the associations' members or their patient-subscribers who have assigned reimbursement claims to their members. Because associations suing in a representative capacity are bound by the same limitations and obligations as their members, see Arizonans for Official English v. Arizona, 520 U.S. 43, 65-66, 117 S. Ct. 1055, 1068 (1997), our previous discussion regarding the scope to be afforded to arbitration agreements with respect to these claims is controlling. Accordingly, we reject HMOs' arguments to the extent that they are inconsistent with our previous determinations of the scope to be given to arbitration agreements as they impact indirect RICO and non-par claims.

20

3. Claims Outside of the Effective Dates of the Arbitration Agreements

HMOs also argue that the district court erred by refusing to compel arbitration of disputes which arose outside of the effective dates of the contracts containing arbitration agreements. Specifically, HMOs argue that our decision in Belke v. Merrill Lynch, Pierce, Fenner & Smith, 693 F.2d 1023, 1028 (11th Cir. 1982) compels us to order arbitration even for claims which arose either before or after the execution of arbitration agreements.[14] We disagree. Our decision in Armada Coal Exp., Inc. v. Interbulk, Ltd., 726 F.2d 1566, 1567-68 (11th Cir. 1984), in which we refused to compel arbitration of claims that arose after a contract with a valid arbitration agreement had been breached, demonstrated that Belke did not categorically command the arbitration of claims arising from disputes outside of the effective dates of arbitration agreements. Moreover, the Supreme Court has since found in the collective bargaining context that arbitration cannot be mandated for a grievance which arose after the expiration of an arbitration agreement even when the parties bargained for a "broad arbitration provision." Litton Fin. Printing Div. v. NLRB, 501 U.S. 190, 193-201, 111 S. Ct.

_____

[14] HMOs argue alternatively that the question of the temporal scope to be afforded to arbitration agreements should be a matter decided by an arbitrator in the first instance. In essence, both parties dispute whether they in fact agreed to arbitrate disputes which arose either before or after the effective dates of the arbitration agreements. Because such questions of arbitrability are "undeniably an issue for judicial determination," we reject HMOs' argument that an arbitrator should decide the temporal scope issue. AT&T Techs., Inc., 475 U.S. at 649, 106 S. Ct. at 1418.

21

2215, 2219-2223 (1991); see District No. 1 - Marine Eng'rs Beneficial Ass'n v. GFC Crane Consultants, Inc., 331 F.3d 1287, 1291 (11th Cir. 2003) (noting that "grievance arbitration obligations end upon expiration of the CBA unless the parties have agreed otherwise"). Because arbitration is strictly a matter of contract, we cannot compel arbitration for disputes which arose during time periods in which no effective contract requiring arbitration was governing the parties. See Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc., 312 F.3d 1349, 1358 (11th Cir. 2002) (per curiam) ("[W]e will compel no arbitration of issues that are outside an agreement to arbitrate."). Accordingly, the district court properly refused to compel arbitration of claims arising from disputes which arose outside of the effective dates of arbitration agreements.

C.  District Court's Refusal to Grant a Stay

We review a district court's denial of a motion to stay litigation of nonarbitrable claims under an abuse of discretion standard. See Moses H. Cone Mem'l Hosp., 460 U.S. at 21 n.23, 103 S. Ct. at 939 n.23; Sam Reisfeld & Son Import Co. v. S. A. Eteco, 530 F.2d 679, 681 (5th Cir. 1976). Pursuant to Section 3 of the FAA, a district court shall stay a pending suit "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration" under a valid arbitration agreement. 9 U.S.C. § 3. For arbitrable issues, the language of Section

22

3 indicates that the stay is mandatory. See Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 226, 107 S. Ct. 2332, 2337 (1987) ("[A] court must stay its proceedings if it is satisfied that an issue before it is arbitrable . . . .") (emphasis added). When confronted with litigants advancing both arbitrable and nonarbitrable claims, however, courts have discretion to stay nonarbitrable claims. See Moses H. Cone Mem'l Hosp., 460 U.S. at 21 n.23, 103 S. Ct. at 939 n.23; AgGrow Oils, L.L.C., v. Nat'l Union Fire Ins. Co. of Pittsburgh, 242 F.3d 777, 782-83 (8th Cir. 2001); Sam Reisfeld & Son Import Co., 530 F.2d at 681. In this instance, courts generally refuse to stay proceedings of nonarbitrable claims when it is feasible to proceed with the litigation. See Dean Witter Reynolds Inc., 470 U.S. at 225, 105 S. Ct. at 1245 (White, J., concurring) (noting that the "heavy presumption should be that the arbitration and the lawsuit will each proceed in its normal course"). Crucial to this determination is whether arbitrable claims predominate or whether the outcome of the nonarbitrable claims will depend upon the arbitrator's decision. See Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 856 (2d Cir. 1987).

Here, the district court found that it would be feasible to compel arbitration of arbitrable claims while allowing litigation of nonarbitrable claims. The district court stated that its refusal to grant the stay would not result in duplicative

23

proceedings and would not permit a decision in either proceeding to have preclusive effect in the other. Moreover, the district court did not find that physicians were predominately advancing arbitrable claims. In fact, at oral argument, it was disputed whether any arbitrable claims remained before the district court which physicians had not dismissed.[15] Because it is well established that a district court may order arbitration and refuse to stay nonarbitrable proceedings, the district court was properly within its discretion to refuse HMOs' motion to stay litigation of nonarbitrable claims. See Dean Witter Reynolds Inc., 470 U.S. at 221, 105 S. Ct. at 1243 (stating that proper enforcement of FAA might yield "piecemeal" litigation); Moses H. Cone Mem'l Hosp., 460 U.S. at 20, 105 S. Ct. at 939 (finding that district court may order the parties to resolve "related disputes in different forums").

### III. CONCLUSION

In this appeal involving both signatories and nonsignatories of broad arbitration agreements, HMOs argued that the district court erred by refusing to compel arbitration and stay litigation based on an expansive interpretation of the arbitration agreements and the strong federal policy favoring arbitration. As we

---

[15] To the extent that claims deemed arbitrable have not been dismissed, we affirm the district court's order that the litigation of arbitrable claims must be stayed and that arbitration of these claims must be compelled. Shearson/Am. Express, Inc., 482 U.S. at 226, 107 S. Ct. at 2337.

have explained, however, the law of the case doctrine precluded us from revisiting our previous rulings regarding indirect RICO claims and the federal policy favoring arbitration could not compel us to order arbitration of disputes which the parties had not agreed to arbitrate. Accordingly, the district court's order is

**AFFIRMED**.