[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 14, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-11326

_____

D. C. Docket No. 06-80966-CV-DTKH


TRIPLE I: INTERNATIONAL INVESTMENTS, INC.,

Counter-claimant-Appellee,

versus

W. E. FIELDING and MYRON H. BUDNICK,

Counter-Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(July 14, 2008)**


Before BIRCH and FAY, Circuit Judges, and HINKLE,* District Judge.

HINKLE, District Judge:

_____
*Honorable Robert L. Hinkle, United States District Chief Judge for the Northern District
of Florida, sitting by designation.

This appeal raises the issue of the arbitrability of specific claims arising from a commercial venture gone bad. The object of the venture was the construction of a cement plant in Nigeria. The parties to this appeal are the owner who proposed to build the plant and two individuals who, according to the owner, participated in a fraudulent scheme under which the owner paid a fee to a surety in connection with a sham financing arrangement. The two individuals were the sole shareholder and the attorney, respectively, of a corporate escrow agent through which certain documents were to be delivered and the surety's fee was to be paid. The individuals assert that the owner's dispute with the surety must be arbitrated based on an arbitration clause in the escrow agreement — an issue raised in a separate appeal involving the owner and the surety — and the individuals assert that the owner's related claims against the individuals therefore must be arbitrated as well. In the separate appeal, we hold that the owner's claims against the surety are not subject to arbitration. In this appeal we therefore reject the individuals' assertion as well.

## I. Facts

Appellee Triple I: International Investments, Inc. ("Triple I") wished to build a cement plant in Nigeria. It needed a $520 million loan. Financial advisors purportedly found a lender (Japan Venture Fund Group ("Japan Venture")) and an issuer of a financial guarantee bond (International Underwriters AG & Liberty Re-Insurance Corporation, S.A. ("International")).

Triple I and International agreed that Triple I would pay International a fee

of $10.4 million for issuing the bond and that International would refund all but $200 of the fee if the bond was not used. International confirmed the agreement in its written bond commitment. There was no agreement to arbitrate.

Triple I and International eventually agreed that the $10.4 million fee would be payable half in advance and half after Triple I's receipt of the loan proceeds. The parties intended to close the transactions remotely, not in person. To facilitate that approach, they engaged an escrow agent (W. E. Fielding and Associates ("WEF")) and entered a written escrow agreement. Among the terms were that International would tender to WEF the $5.2 million payable to International in advance, that International would tender to WEF the appropriate bond documents, and that — upon confirmation that Japan Venture had funded the loan — WEF would disburse the $5.2 million to International. The escrow agreement included a clause calling for arbitration of "any dispute arising pursuant to or in any way related to this Agreement or the transactions contemplated hereby." Escrow Agreement, R.1.1.8 ¶12.

Triple I tendered the $5.2 million to WEF. International tendered the bond documents to WEF. Japan Venture never funded the loan, but WEF disbursed the $5.2 million to International. Triple I demanded return of the fee, but International balked. Triple I thus was out $5.2 million.

International filed a lawsuit in which it denied that Triple I was entitled to a refund of the entire $5.2 million but also sought to "interplead" that amount for a determination by the court of the parties' respective rights. Triple I

3

counterclaimed. In due course International voluntarily dismissed its complaint, and Triple I twice amended its counterclaim. In the second amended counterclaim, Triple I asserted that the whole deal was a sham from the outset. Triple I named 11 counterclaim defendants, including International and the two appellants now before the court: WEF's sole shareholder William Fielding and WEF's attorney Myron Budnick (collectively "the appellants"). Triple I sought recovery against all of the counterclaim defendants for fraud and under the Racketeer Influenced and Corrupt Organizations Act. Triple I also sought recovery against International for breach of the contract for issuance of the financial guarantee bond and on a related theory of promissory estoppel. Triple I expressly did *not* seek recovery against International or the other counterclaim defendants for breach of the escrow agreement:

> By this Second Amended Counterclaim, [Triple I] hereby makes no claim against International or the Additional Counterclaim Defendants for breach of the Escrow Agreement or based upon the escrow transaction contemplated in the Escrow Agreement.

Second Amended Counterclaim, R.1.32.7 ¶35.

International moved to compel arbitration based on the arbitration clause in the escrow agreement. The district court denied the motion. The appellants also filed motions to compel arbitration. The district court denied their motions as well. International filed an appeal that we have addressed in a separate opinion. The appellants filed the appeals now before the court.

## II. Standard of Review

4

We review *de novo* a district court's decision on whether a dispute is covered by an arbitration agreement. *See, e.g., Employers Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1321 (11th Cir. 2001).

### III.  Merits

A dispute ordinarily is arbitrable if the parties have agreed to arbitrate it.  As we have said:

> Absent some violation of public policy, a federal court must refer to arbitration any controversies covered by the provisions of an arbitration clause.  *Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851, 854 (11th Cir.1992).  Whether a party has agreed to arbitrate an issue is a matter of contract interpretation: "[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

*Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1114 (11th Cir. 2001).  The canons of construction run in favor of arbitration.  *See, e.g., Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983) ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").

Triple I entered no agreement with the appellants at all.  They are not parties to any relevant agreement to arbitrate any dispute.  They make no claim to the contrary.

As the appellants correctly note, however, a nonparty sometimes can enforce an arbitration agreement entered by others.  *See, e.g., Blinco v. Green Tree Servicing LLC*, 400 F.3d 1308, 1312 (11th Cir. 2005); *MS Dealer Serv. Corp. v.*

5

*Franklin*, 177 F.3d 942, 947 (11th Cir. 1999). Thus, for example, in *Blinco*, we said that an arbitration clause in a note was "sufficiently broad to allow non-signatories to invoke the clause where, as here, they face claims derived from the Note." *Blinco*, 400 F.3d at 1312. And we cited *MS Dealer*, 177 F.3d at 947-48, for the proposition that where a signatory's claims against a non-signatory "depend on a contract containing an arbitration clause," the signatory must arbitrate with the non-signatory. *Blinco*, 400 F.3d at 1312.

These principles would allow the appellants to compel arbitration if Triple I had sued them on grounds "derived from" or "depend[ent] on" the escrow agreement. But Triple I did not do so. Instead, Triple I asserted a claim for breach of the escrow agreement only against WEF. Triple I readily consented to arbitration of that claim.

Triple I asserted claims against the appellants for fraud in connection with a separate agreement — International's agreement to issue a financial guarantee bond in support of a loan purportedly available from Japan Venture. Triple I asserted that the appellants, individually, developed the scheme, in concert with International and Japan Venture. Triple I asserted that the appellants fraudulently represented that they had successfully worked with International and Japan Venture on other transactions and that Japan Venture was a large, well established private equity fund. Triple I says that all of this was untrue and that International and Japan Venture were only shells.

The appellants assert that the claims against them are arbitrable because

6

derived from or dependent on Triple I's claims against International. The appellants assert that the claims against International are arbitrable based on the arbitration clause in the separate escrow agreement. As we hold in International's separate appeal, however, Triple I's claims against International are not covered by the escrow agreement's arbitration clause and thus need not be arbitrated. The appellants' entire premise thus is faulty.

The appellants assert no other grounds for their effort to compel arbitration. Nor could they prevail on any other basis. Although they are the shareholder and attorney, respectively, of the corporate escrow agent, they face claims in this action not as agents or representatives of the escrow agent but as individuals who participated in a fraud separate and apart from the escrow agreement or escrow transactions. There was no agreement between Triple I and anyone for arbitration of those claims.

## IV. Conclusion

The appellants are individuals who seek to glom onto an arbitration clause in a contract to which they were not parties. The effort fails not because glomming is not allowed, but because the arbitration clause the appellants invoke does not apply to the claims at issue. The district court's order denying the appellants' motions to compel arbitration is **AFFIRMED.**