[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 17, 2009
THOMAS K. KAHN
CLERK

No. 08-14799
Non-Argument Calendar

_____

D. C. Docket No. 08-80532-CV-WPD

EARL SCOTT,

Plaintiff-Appellant,

versus

EFN INVESTMENTS, LLC,
d.b.a. Napleton's Nissan,
CITIFINANCIAL AUTO CORPORATION,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(February 17, 2009)**

Before BLACK, BARKETT and MARCUS, Circuit Judges.

PER CURIAM:

Earl Scott appeals from the district court's final order dismissing his putative

class action claims against EFN Investments, LLC and CitiFinancial Auto

Corporation (the "Defendants"), arising out of an automobile purchase. The

district court concluded that an agreement to arbitrate the parties had entered into -- separate and distinct from the sales contract for the automobile purchase -- was valid and enforceable, thereby dismissing the case in favor of arbitration. On appeal, Scott argues that the district court erred in ruling that the agreement to arbitrate was not rescinded when the associated sales contract was rescinded. After careful review, we affirm.

We review de novo the district court's grant of a motion to dismiss for failure to state a claim, accepting all factual allegations in the complaint as true and construing them in the light most favorable to the plaintiff. See Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003).

The relevant facts are these. Scott alleged that on or about April 22, 2007 he visited Napleton's Nissan ("Napleton's") to purchase a used automobile, and ultimately selected a 2005 Nissan Altima. On that same day, Scott signed a Retail Installment Sales Contract ("RISC"). The RISC was a "spot deliver" agreement, wherein the used vehicle was delivered to Scott subject to acceptance by a financing institution of the RISC. The RISC contained an arbitration clause. According to Scott, within days after the RISC was executed the dealership rescinded the agreement and advised that the vehicle must be returned to the dealership immediately.

2

Also on April 22, 2007, however, Scott executed a separate and distinct Agreement to Arbitrate. This stand-alone Agreement to Arbitrate reads in part:

By entering into this Agreement to Arbitrate ("Agreement"), Customer(s) and Dealership (collectively referred to as "the Parties") agree, except as otherwise provided in this Agreement, to settle by binding arbitration any dispute between them regarding: (1) the purchase/lease by Customer(s) of the above-referenced Vehicle; (2) any products and services purchased in conjunction with the Vehicle; and/or (3) any dispute with respect to the existence, scope or validity of this Agreement. Matters that the Parties agree to arbitrate include, but are not limited to, disputes related to the Retail Purchase/Retail Lease Agreement and any documents incorporated therein by reference (whether such reference is made in the Retail Purchase/Retail Lease Agreement or the document itself), the application for and terms of financing for the transaction, the Finance/Lease Contract, any alleged promises, representations and/or warranties made to or relied upon by the Parties and any alleged unfair, deceptive or unconscionable acts or practices.

Notwithstanding any other provision of this Agreement, the Parties agree that they are not waving their right to exercise any self-help or provisional remedy available at law or pursuant to agreement between them. Nor is either Party required to arbitrate any individual claim (as opposed to a class action) that is filed and properly within the jurisdiction of a small claims court or equivalent state court.

. . . This Agreement evidences a transaction involving interstate commerce. The parties acknowledge and agree that the Federal Arbitration Act (9 U.S.C. § 1 et seq.) ("FAA") shall govern any arbitration under this Agreement.

. . . the Parties agree that by entering into this Agreement, they are waiving their right to a jury trial and their right to bring or participate in any class action or multiplaintiff action in court or through arbitration. Once one of the parties has demanded arbitration, binding

3

arbitration is the exclusive method for resolving any and all claims between then.

After Napleton's took possession of the Nissan Altima, Scott filed this lawsuit in state court, alleging violations of the Florida Motor Vehicle Sales Finance Act, the Fair Credit Reporting Act, the Equal Credit Opportunity Act, the Florida Unfair and Deceptive Trade Practices Act, and breach of contract. The Defendants removed the case to federal court, and based upon the Agreement to Arbitrate, moved to dismiss Scott's case in favor of arbitration. The district court agreed with the Defendants, and dismissed the case. This appeal follows.

The Federal Arbitration Act provides that a written arbitration agreement arising from a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. While we recognize the strong federal policy in favor of arbitration, see generally Seaboard Coast Line R.R. v. Trailer Train Co., 690 F.2d 1343, 1348 (11th Cir. 1982), we will not compel parties to arbitrate a dispute where the parties have not agreed to do so, Klay v. All Defendants, 389 F.3d 1191, 1200 (11th Cir. 2004). In determining the propriety of a motion to compel arbitration, we engage in a two-step inquiry: (1) first, we determine whether the parties agreed to arbitrate the dispute; and (2) second, we

decide whether "legal constraints external to the parties' agreement foreclosed arbitration." Id. (quotations omitted).

As for the first step, the plain language of the Agreement to Arbitrate indicates that Scott agreed to arbitrate all disputes regarding "the purchase/lease by Customer(s) of the above-referenced Vehicle," as well as any "disputes related to the Retail Purchase/Retail Lease Agreement" or "any alleged unfair, deceptive or unconscionable acts or practices." These encompass the very disputes that Scott has alleged in his complaint -- which include violations of the Florida Motor Vehicle Sales Finance Act, the Fair Credit Reporting Act, the Equal Credit Opportunity Act, the Florida Unfair and Deceptive Trade Practices Act, and breach of contract. It thus seems clear that under the Agreement to Arbitrate, Scott has agreed to submit these very counts to arbitration.

As for the second step, Scott argues that because the Defendants rescinded the sales contract, the stand-alone Agreement to Arbitrate necessarily was rescinded. But as the Supreme Court has held, "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445-46 (2005). Because Scott is not challenging the validity of the Agreement to Arbitrate, but that "the transaction in its entirety was

revoked/rescinded," the challenge must be decided by an arbitrator. Id. Moreover, while Scott contends that there is nothing left to arbitrate because there are no remaining substantive contractual provisions, Scott's complaint alleges, among other things, a breach of contract count, clearly indicating that he is challenging the existence of these contractual provisions. Further, as the district court reasoned, if the Agreement to Arbitrate only governed a completed sale, there would be no need for a stand-alone agreement in addition to the arbitration clause contained in the RISC.[1] We therefore conclude that the stand-alone Agreement to Arbitrate is valid and enforceable.

Accordingly, we affirm the district court's dismissal of the case in favor of arbitration.

**AFFIRMED.**

---

[1] Scott also relies on several cases holding that when a party unilaterally cancels or nullifies an entire contract, any arbitration clause contained there is also cancelled and therefore unenforceable. As the district court found, however, these cases are distinguishable from the instant one -- where Scott entered into a stand-alone Agreement to Arbitrate.