**Marcus D. MIMS, Plaintiff,**

v.

**GLOBAL CREDIT AND COLLECTION CORPORATION, Defendant.**

**Case No. 10–23830–CIV.**

United States District Court, S.D. Florida.

Aug. 12, 2011.

Donald A. Yarbrough, Fort Lauderdale, FL, for Plaintiff.

Christine Irwin Parrish, Burr & Forman, Orlando, FL, Robert Franklin Springfield, Burr & Forman, Birmingham, AL, for Defendant.

## *ORDER*

CECILIA M. ALTONAGA, District Judge.

**THIS CAUSE** came before the Court on Defendant, Global Credit & Collection Corporation's ("Global['s]") Motion to Compel Arbitration ("Motion") [ECF No. 35], filed on June 23, 2011. The Court has carefully considered the parties' written submissions and applicable law.

### I. BACKGROUND

This case arises from Global's attempt to collect a debt allegedly owed by Plaintiff under a credit agreement between Plaintiff and Capital One Bank (U.S.A.), N.A. ("Capital One"). On October 22, 2010, Plaintiff, Marcus D. Mims, filed a Complaint [ECF No. 1] against Global alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") and the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"). In particular, Plaintiff alleges Global left numerous telephone messages on Plaintiff's voicemail in which Global "failed to inform Plaintiff ... that the communication was from a debt collector[,] failed to disclose the purpose of Defendant's messages and failed to disclose Defendant's name." (Compl.¶¶ 9–12). Global now seeks to compel arbitration of this dispute pursuant to an arbitration provision contained in Plaintiff's Customer Agreement ("Agreement") [ECF No. 35–1] with Capital One. (*See* Mot. 1).

### A. Customer Agreement

Plaintiff entered into the Agreement with Capital One in 2005 when he opened a revolving credit account. The Agreement identifies the rights and responsibilities of the parties with regard to Mims's Capital One credit card account. For example, it allows Capital One to transfer the account and its rights under the Agreement to an assignee. (*See* Agreement 6). The Agreement also contains an Arbitration Provision that states:

> You and we agree that either you or we may, at either party's sole election, require that any Claim (as defined below) be resolved by binding arbitration.
> * * *
> "Claim" means any claim, controversy, or dispute of any kind or nature between you and us.
> A. *This definition includes, without limitation, any Claim that in any way arises from or relates to:*
> - the Agreement and any of its terms . . .
> - this Arbitration Provision. . . .
> - any billing or collections matters relating to your account. . . .
> - any other matters relating to your account or your relationship with us

(Agreement 8) (emphasis in original). The Agreement indicates that, when used in the contract, "the words 'we,' 'us' and 'our' mean Capital One Bank and its successors, assigns, agents and/or authorized representatives." (*Id.* 6).

### B. Sale of Capital One Accounts to Equable Ascent Financial, LLC

In June 2009, Capital One sold and assigned Plaintiff's Account to Equable Ascent Financial, LLC f/k/a Hilco Receivables, LLC ("EAF"). (*See* Mot. 2). EAF is in the business of purchasing revolving credit accounts, installment accounts and/or other credit lines from credit issuers. (*See* Decl. of Greg Neely ¶ 5 [ECF No. 35–2]). After it purchases accounts, EAF then attempts to collect the unpaid balances on those accounts. (*See id.*). The June 2009 sale of the accounts from Capital One to EAF is evidenced by a Bill of Sale [ECF No. 35–3], in which Capital One "sells, assigns, and transfers all right, title and interest in the Accounts identified . . . to [EAF]." (Bill of Sale 2). One of the accounts identified as transferred by the Bill of Sale is Plaintiff's revolving credit account with Capital One. (*See id.* 3; Decl. of Greg Neely ¶ 8).

### C. EAF's Hiring of Global

Around July 6, 2009, EAF retained Global to collect the unpaid balance on Plaintiff's account. (*See id.*). In its ordinary course of business, Global attempts to collect unpaid balances on revolving credit accounts, installment accounts and/or other credit lines. (*See* Decl. of Daniele Depaolis ¶ 5 [ECF No. 35–4]). The relationship between Global and EAF is governed by the Third Party Collection Services Agreement ("CSA") [ECF No. 42–1] entered into by them on June 22, 2006. In the CSA, Global agrees to perform debt collection services for EAF in exchange for payment. (*See* CSA).

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") establishes a general federal policy favoring arbitration. *See Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 217–18, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). In particular, Section 2 of the FAA requires the enforcement of arbitration clauses in contracts covered by the provisions of the Act, stating:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transac-

tion, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The Supreme Court has recognized that "Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The FAA further provides that

> [i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. Still, "[w]hile there is a liberal federal policy favoring arbitration agreements, 'the FAA's strong proarbitration policy only applies to disputes that the parties have agreed to arbitrate.'" *Becker v. Davis*, 491 F.3d 1292, 1298 (11th Cir. 2007) (quoting *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir.2004)); *Magnolia Capital Advisors, Inc. v. Bear Stearns & Co.*, 272 Fed.Appx. 782, 785 (11th Cir. 2008) ("[P]arties cannot be forced to submit to arbitration if they have not agreed to do so.") (internal quotation omitted).

■ Consequently, when considering whether claims are subject to an arbitration provision, a district court must undertake a two-step inquiry. *See Scott v. EFN Invs., LLC*, 312 Fed.Appx. 254, 256 (11th Cir.2009) (citing *Klay*, 389 F.3d at 1200); *Patriot Mfg., Inc. v. Dixon*, 399 F.Supp.2d 1298, 1300 (S.D.Ala.2005) (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626–28, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). The first step is to determine whether the parties agreed to arbitrate the dispute, which is a determination made by reference to the " 'federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [FAA].' " *Mitsubishi Motors Corp.*, 473 U.S. at 626, 105 S.Ct. 3346 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24, 103 S.Ct. 927). If the court concludes that the parties did agree to arbitrate the dispute in question, then the second step is to consider whether legal constraints external to the parties' agreement foreclose the arbitration of those claims. *See Patriot Mfg., Inc.*, 399 F.Supp.2d at 1301.[1]

## III. ANALYSIS

In the present Motion, Global seeks to compel arbitration of this dispute pursuant to an arbitration provision contained in Plaintiff's Agreement with Capital One. (*See* Mot. 1). For the following reasons the Court finds the Motion must be denied.

### A. Timeliness

■ First, Defendant's invocation of the arbitration clause at this point in litigation is untimely. A party waives the right to compel arbitration if "[the] party seeking arbitration substantially participates in litigation to a point inconsistent with an intent to arbitrate and this participation

---

**1.** The Court does not reach this second step in this analysis.

results in prejudice to the opposing party." *Morewitz v. W. of Eng. Ship Owners Mut. Prot. & Indem. Ass'n*, 62 F.3d 1356, 1366 (11th Cir.1995); *see also Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1158 (5th Cir.1986). Prejudice may result if the "party seeking arbitration allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate." *Morewitz*, 62 F.3d at 1366 (citations omitted).

■ Global waited over eight months after being served with the Complaint to file its Motion to Compel Arbitration. In the meantime, Global participated in the litigation of this dispute in federal court, including attendance at hearings and participation in a mediation conference, without ever attempting to invoke a right to arbitration. Consequently, even if Global has a right to arbitration—which, as discussed below, the Court believes it does not—that right has been waived.

**B. Applicability of the Arbitration Provision to this Dispute**

■ Second, even if the Motion was timely, the Court does not find the arbitration provision applies to this dispute. Admittedly, "it is well-settled that a nonparty can enforce an arbitration agreement if the language of the agreement is broad enough to permit the nonparty to invoke it." *Bolanos v. First Investors Servicing Corp.*, No. 10–23365–CIV, 2010 WL 4457347, at *2 (S.D.Fla. Oct. 29, 2010) (citing *Triple I: Int'l Inv., Inc. v. Fielding*, 290 Fed.Appx. 229, 232 (11th Cir.2008) ("[A] nonparty sometimes can enforce an arbitration agreement entered by others.")). In particular, the Eleventh Circuit has recognized that a non-signatory to a contract may invoke an arbitration clause therein in three limited circumstances: (1) under a theory of equitable estoppel, (2) under agency or related principles, or (3) where the nonsignatory is an intended

third-party beneficiary of the contract. *See Liles v. Ginn–La W. End, Ltd.*, 631 F.3d 1242, 1256 (11th Cir.2011) (citation omitted).

Global contends the parties should be compelled to arbitrate the dispute because two of those circumstances are present here: (1) Global is a third party beneficiary to the Agreement; and (2) the doctrine of equitable estoppel warrants arbitration of Plaintiff's claims against Global. The Court addresses each of these arguments in turn.

**1. Third Party Beneficiary**

■ A non-party to a contract containing an arbitration clause may compel parties to the contract to arbitrate if it is determined the non-party is a third-party beneficiary to the contract. *See Peters v. The Keyes Co.*, 402 Fed.Appx. 448, 451 (11th Cir.2010) (citing *Fla. Power & Light Co. v. Road Rock, Inc.*, 920 So.2d 201, 203 (Fla. 4th DCA 2006), *aff'g* 2010 WL 1645095 (S.D.Fla. Apr. 21, 2010 (Altonaga, J.))). However, a third party may claim a contract benefit only if the parties to the contract clearly express an intention to confer a benefit on the third party. *See Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 983 (11th Cir.2005). Indeed, " '[a] non-party is the specifically intended beneficiary only if the contract clearly expresses an intent to primarily and directly benefit the third party or a class of persons to which that party belongs.' " *Id.* (quoting *Morgan Stanley DW Inc. v. Halliday*, 873 So.2d 400, 403 (Fla. 4th DCA 2004)).

■ Here, Global contends it is a third party beneficiary to the Agreement because the parties expressed an intention to confer a benefit on Global when they made the arbitration provision applicable to any dispute between "us" and the Plaintiff. Specifically, Global asserts it falls within the category of persons included in the definition of "us" under the Agreement

because it is an authorized representative of EAF. (*See* Mot. 4 ("[U]nder the plain language of the Contract, [Plaintiff] agreed to arbitrate any claims against assigns, such as EAF, and authorized representatives of assigns, such as Global.")). Essentially, Global's argument is based on the following assumptions: (1) Global is an authorized representative of EAF; (2) EAF is an assign of Capital One; and (3) the arbitration provision applies to authorized representatives of assigns. The Court finds this argument unpersuasive for several reasons.

First, the CSA, which governs the relationship between EAF and Global, makes clear Global is an independent contractor rather than an agent or authorized representative of EAF. (*See* CSA 15). Global asserts "it is well-settled [2] that a party collecting a debt on behalf of another is an 'authorized representative' of that entity." (Reply 1 [ECF No. 51]). In support of its position, Global cites *Hodson v. Javitch, Block & Rathbone, LLP*, 531 F.Supp.2d 827, 831 (N.D.Ohio 2008). In *Hodson*, the court held that the law firm Capital One "hired to pursue collections actions under the cardholder agreements [the plaintiff] signed with Capital One" qualified as an authorized representative of Capital One for purposes of the arbitration provision. *Id.* at 831. However, here, unlike in *Hodson*, there is an agreement explicitly defining the relationship between Capital One and the debt collector as that of an independent contractor. In particular, the CSA states:

> ***Independent Contractor.*** In performing the Services, [Global and EAF] acknowledge and agree that [Global] is an independent contractor to [EAF] and nothing herein will be deemed to create an employer/employee, partnership or

joint venture relationship between [Global and EAF], nor does this Services Agreement authorize [Global] as the agent or legal representative of [EAF] or any of the Staff or other employee of [Global] as the agent or legal representative of [EAF] for any purpose whatsoever.

(*Id.*) (emphasis in original). As evidenced by the CSA, Global expressly agreed to perform the debt collection services as an independent contractor and disclaimed any notion that it was an agent or authorized representative of EAF. Consequently, Global's present argument to the contrary is particularly brazen.

In its Reply, Global attempts to draw a distinction between "legal representative" and "authorized representative," asserting the latter is broader than the former. (Reply 1–4). Global contends "the fact that the [CSA] states that Global is not a 'legal representative' [of EAF] does not prevent Global from being an 'authorized representative' [of EAF]." (*Id.* 3). This argument fails to persuade. The CSA specifically disclaims that Global or any employee of Global is an *agent or legal representative* of EAF for any purpose whatsoever. (*See* CSA 15). Even if the phrase "authorized representative" includes a broader class of individuals than does "legal representative," the inclusion of the term "agent" encompasses any authorized representatives who do not fall within the category of "legal representatives." In fact the very definition of an agent is "[o]ne who is authorized to act for or in place of another; a representative." BLACK'S LAW DICTIONARY (9th ed.2009). Accordingly, the Court does not find Global is an authorized representative of EAF.

---

**2.** Global cites only one case from the Northern District of Ohio for this "well-settled" principle.

Moreover, even if Global was an authorized representative of EAF, the Agreement does not make the arbitration provision applicable to authorized representatives of assigns. The Agreement provides that if Capital One transfers or assigns Plaintiff's account, "[t]he assignee will take [Capital One's] place under the Agreement . . . with respect to the agreements and interests transferred." (Agreement 6; *see* Mot. 5). As a result, Global argues that when Capital One assigned its rights under the Agreement to EAF, EAF essentially "stepped into the shoes of Capital One" and "took Capital One's place within the definition of 'we,' 'us,' and 'our.' " (Mot. 5). In other words, under Global's line of reasoning, after the transfer, the definition of "us" in the Agreement changed from meaning "Capital One and its successors, assigns, agents and/or authorized representatives" to meaning "EAF and its successors, assigns, agents and/or authorized representatives."

The Court cannot conclude the parties clearly intended to benefit Global when executing the Agreement and the accompanying arbitration clause. In the Customer Agreement, the parties specifically defined "us" as meaning "Capital One Bank and *its* successors, assigns, agents, and/or authorized representatives." (Agreement 6) (emphasis added). Global is neither an assign of Capital One nor an authorized agent of Capital One, but even if it was an authorized representative of EAF, the Court does not find the parties intended "us" to include an authorized representative of an assign of Capital One.

When Capital One executed the Bill of Sale, it sold and transferred all of its rights and interests in the account to EAF. EAF was therefore an assign of Capital One and had the right to compel arbitration for any disputes it had with Plaintiff, just as Capital One would have been able

to do. Indeed, the arbitration provision itself acknowledged the possibility of a transfer when it recognized that the right to compel arbitration would apply to a dispute between Plaintiff and Capital One's assigns. Although the Agreement also states that any assignee of Capital One will "take [Capital One's] place under the Agreement," that provision does not mean that when Capital One transferred its rights to EAF, every reference to Capital One in the Agreement now meant EAF. To adopt Global's reading of the contract—that after the transfer, the reference to Capital One in the definition of "us" now referred to EAF—renders the inclusion of "assigns" in the definition of "us" entirely superfluous. "The law compels that a contract should not be interpreted in a manner that would render a word, or term, extraneous." . *Siedle v. Nat'l Ass'n of Sec. Dealers, Inc.*, 248 F.Supp.2d 1140, 1144 (M.D.Fla.2002); *see also Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non–Marine Ass'n*, 117 F.3d 1328, 1338 (11th Cir.1997) (" '[A]n interpretation which gives a reasonable meaning to all provisions of a contract is preferred to one which leaves a part useless or inexplicable.' ") (quoting *Premier Ins. Co. v. Adams*, 632 So.2d 1054, 1057 (Fla. 5th DCA 1994)); RESTATEMENT (SECOND) OF CONTRACTS § 203(a) (1981). The Court will not read the Agreement in the manner advocated by Global.

Furthermore, to the extent the relationship between those two provisions of the Agreement is ambiguous, that ambiguity must be construed against the drafter of the Agreement, Capital One, and its successors and assigns. *See Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327 (11th Cir.2005). This is particularly true where the language was selected to benefit the drafter. *See id.*

Finally, in defining "us" as referring only to certain enumerated categories of individuals, the parties evinced a clear intent that the arbitration provision only apply to disputes between Plaintiff and those specific individuals. Consequently, the Court will not construe the provision as limitlessly expanding that definition.

Notably, the instant case is distinguishable from cases where the relevant arbitration provisions applied to all disputes arising out of the agreements. Courts dealing with those sorts of broad arbitration provisions have consistently held that in disputes between a signatory to the agreement and a non-signatory, the arbitration clause may be invoked as long as the dispute arises from the agreement. *See Blinco v. Green Tree Servicing LLC*, 400 F.3d 1308, 1312 (11th Cir.2005) (concluding that provision including claims arising from "the relationship ... result[ing] from the [agreement]," was broad enough to allow non-signatory third party to invoke it against plaintiff); *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 383 (5th Cir.2008) (holding that loan agreement including claims arising from "the relationships ... result[ing] from th[e] [a]greement," was broad enough to include plaintiff's FDCPA claims against non-signatory debt collector). In those cases, unlike the present case, the agreements did not expressly and specifically limit the claims subject to arbitration to those between the debtor and a defined list of persons affiliated with the creditor. In contrast, here, the arbitration provision is narrower in scope. Rather than apply to all disputes arising out of the Agreement, the provision is explicitly limited to those disputes between Plaintiff and the enumerated individuals. Plaintiff thus cannot fairly be considered to have consented to arbitration with other unenumerated entities.

In sum, the Agreement contains nothing to suggest that Capital One and Plaintiff intended to benefit Global, much less that the arbitration clause was included for Global's primary and direct benefit. Accordingly, Global's argument on this basis fails. *See Peters*, 402 Fed.Appx. at 451 (affirming denial of motion to compel arbitration where there was no indication the parties to an agreement intended to benefit the third party or included an arbitration clause for the third party's primary and direct benefit).

### 2. Equitable Estoppel

■ Under the doctrine of equitable estoppel, "a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where ... the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 126–27 (2d Cir.2010) (internal quotation marks and citation omitted). This does not mean:

> that whenever a relationship of any kind may be found among the parties to a dispute and their dispute deals with the subject matter of an arbitration contract made by one of them, that party will be estopped from refusing to arbitrate ... [I]n addition to the "intertwined" factual issues, there must be a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement.

*Id.* at 127 (quoting *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 359 (2d Cir.2008)). The Eleventh Circuit has held that this equitable estoppel theory applies under two circumstances.

> First, equitable estoppel applies when the signatory to a written agreement

containing an arbitration clause "must rely on the terms of the written agreement in asserting [its] claims" against the nonsignatory. When each of a signatory's claims against a nonsignatory "makes reference to" or "presumes the existence of" the written agreement, the signatory's claims "arise[ ] out of and relate[ ] directly to the [written] agreement," and arbitration is appropriate. Second, "application of equitable estoppel is warranted . . . when the signatory [to the contract containing the arbitration clause] raises allegations of . . . substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract."

*MS Dealer Serv. Corp. v. Franklin,* 177 F.3d 942, 947 (11th Cir.1999) (internal citations omitted) (alterations in original).

■ Here, Plaintiff's claims are not based on the terms of the Agreement. Plaintiff alleges only that Global violated the FDCPA and the TCPA by leaving messages without identifying itself and without indicating the calls were being made in an effort to collect a debt. Although the claims presume the existence of the Agreement, they do so purely for the purpose of noting there is an underlying debt. As such, the claims are not intertwined with the Agreement between Plaintiff and Capital One. Nor are the claims based on any substantially interdependent and concerted misconduct by Global and Capital One. Therefore, it is not appropriate to apply the doctrine of equitable estoppel to compel arbitration in this case.

## IV. CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that the Motion **[ECF No. 35] is DENIED.**