Patricia GUNSON, Plaintiff

v.

BMO HARRIS BANK, N.A.,
and others, Defendants.

Civil Action No. 13–62321–Civ.

United States District Court,
S.D. Florida.

Signed Sept. 10, 2014.

Darren T. Kaplan, Chitwood Harley Harnes, LLP, Atlanta, GA, Hassan A. Zavareei, Jeffrey D. Kaliel, Tycko & Zavareei, LLP, Washington, DC, Jeffrey Miles Ostrow, Jason Henry Alperstein, The Kopelowitz & Ostrow Firm PA, Fort Lauderdale, FL, John Austin Moore, Stueve Siegel Hanson, LLP, Kansas City, MO, for Plaintiff.

Aaron Stenzler Weiss, Carlton Fields Jorden Burt, P.A., Brian Michael Torres, Sheftall & Torres, P.A., Miguel Mario Cordano, Liebler Gonzalez & Portuondo PA, Miami, FL, Debra Bogo–Ernst, Laura Hammargren, Lucia Nale, Mayer Brown, LLP, Chicago, IL, Bryan R. Freeman, James P. McCarthy, John C. Ekman, Lindquist & Vennum, Minneapolis, MN, Ashley N. Gillard, Robert M. Thompson, Bryan Cave LLP, Kansas City, MO, Michael P. Carey, William Bard Brockman, Bryan Cave, LLP, Christopher J. Willis, Ross Speier, Stefanie H. Jackman, Ballard Spahr, LLP, Atlanta, GA, Carl N. Patterson, Jr., Clifton L. Brinson, Isaac A. Linnartz, Smith, Anderson, Blount, Dorsett, Mithcell & Jernigan, LLP, Raleigh, NC, Marc Jonathan Gottlieb, Akerman Senterfitt & Eidson, Fort Lauderdale, FL, Kevin Ranlett, Mayer Brown, LLP, Washington, DC, Wendy Lynn Furman, Pett Furman PL, Boca Raton, FL, for Defendants.

### Order Granting Motions to Compel Arbitration

ROBERT N. SCOLA, JR., District Judge.

Plaintiff Patricia Gunson brings this class action to recover damages and equitable relief from Defendants BMO Harris Bank, N.A. (BMO), First Premier Bank, Missouri Bank and Trust (Missouri Bank), Four Oaks Bank & Trust Co., and Mutual of Omaha Bank (Omaha Bank) for their "scheme to access and utilize the Automated Clearing House (ACH) Network to collect unlawful debts in violation of 18 U.S.C. § 1962 and the laws of numerous states, including Florida." (ECF No. 1, ¶ 2). Defendants BMO, Missouri Bank, Omaha Bank, and First Premier Bank have moved to compel arbitration of Gunson's claims. For the reasons set forth below, the Court grants these Motions (ECF Nos. 45, 71, 72, and 76).

### A. Factual and Procedural Background

This case arises from several "payday" loans that Gunson applied for and received. A "payday" loan is "a short-term (typically a matter of weeks) high fee, closed-end loan, traditionally made to consumers to provide funds in anticipation of an upcoming paycheck." (ECF No. 1, ¶ 36). Gunson applied for and received payday loans of $400.00 from lender East Side on July 9, 2014 (ECF No. 1, ¶ 90); $1,000.00 from lender Cash in a Wink on August 4, 2012 (*Id.* ¶ 98); $550.00 from lender Cash in a Wink on April 8, 2013 (*Id.* ¶ 101); $400.00 from lender Galaxy Mar-

keting on March 25, 2013 (*Id.* ¶ 104); and several loans from lender Plain Green (*Id.* ¶ 107). Each loan was made pursuant to a Loan Agreement that allowed for the lender to initiate electronic funds transfers through the ACH network. A transaction on the ACH network starts when an accountholder authorizes an ACH network transaction with a merchant. (*Id.* ¶ 52). The merchant then transmits the authorization to the Originating Depository Financial Institution (ODFI). The ODFI then transmits the authorized credit or debit transaction through the ACH system to the accountholder's bank. (*Id.*). Defendants are the ODFIs that originated the loans at issue in this case. Defendants have attached the relevant Loan Agreements to their Motions. (ECF Nos. 46–1, 71–1, 73–1 & 76–1).

The applicable Loan Agreements, while they do not mention Defendants by name, contain sweeping arbitration clauses. The Loan Agreements that Gunson signed involving Defendants Omaha Bank, Missouri Bank, and First Premier Bank state that **"YOU ARE GIVING UP YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST U.S. OR RELATED THIRD PARTIES"** and that **"YOU ARE GIVING UP YOUR RIGHT TO HAVE A COURT [ ] RESOLVE ANY DISPUTE ALLEGED AGAINST U.S. OR RELATED THIRD PARTIES."** (ECF No. 46–1 at 8, ECF No. 71–1 at 26 & ECF No. 73–1 at 38) (emphasis in original).

The arbitration provision in the Loan Agreement relating to Omaha Bank, defines "dispute" as "any controversy or claim between you and Lender, its marking agent, collection agent, any subsequent holder of this Note, or any of their respective agents, affiliates, assigns, employees. . . ." (ECF No. 71–1 at 25). The Loan Agreement further states that the word "dispute" is to be interpreted in the "broadest possible meaning" and "includes, by way of example and without limitation, any claim arising from, related to or based upon . . . the handling or servicing of your account. . . ." (*Id.*). The agreement also states that the "Agreement to Arbitration . . . benefits and is binding upon us, our successors and assigns, and related third parties." (*Id.*).

The Loan Agreement relating to First Premier and Missouri Bank state that the arbitration provision applies to all "disputes" which should be interpreted in its "broadest possible meaning" and includes "all claims asserted by you against us and/or any of our employees, agents, directors, officers, shareholders, governors, managers, members, parent company, affiliated entities, successors, assigns, or subsequent holders of your promissory notice (hereinafter collectively referred to as 'related third parties')" as well as "all federal or state law claims, disputes, or controversies, arising from or relating directly or indirectly to the Loan Agreement. . . ." (ECF Nos. 46–1 at 8). The Loan Agreement relating to First Premier contains a substantially similar provision. (ECF No. 73–1 at 30).

The Loan Agreement that pertains to BMO states that "any and all claims, disputes or controversies arising under the common law or pursuant to federal, state, or local constitution, statute, ordinance, rule, regulation, common law or otherwise between You and Us (including employees, officers directors, agents, assigns and related third parties of You or Us) . . . shall be resolved by binding arbitration." (ECF No. 76–1 at 3). The Loan Agreement further states that "[t]his Arbitration Provision is binding upon and benefits Us, our successors, and assigns and all related third parties." (*Id.*).

Gunson filed suit on October 23, 2013. She has not named any of the lenders as defendants and instead sues the ODFI Defendants, who are not signatories to the Loan Agreements. Gunson seeks to represent a putative class of people for whom Defendants allegedly processed ACH transactions and in doing so allegedly committed violations of the Racketeer Influence and Corrupt Organization Act (RICO), Florida Usury Law, the Florida Deferred Presentment Act, and the Florida Deceptive and Unfair Trade Practices Act.

The Court is aware that defendants and counsel for plaintiffs are involved in similar "copycat" cases in other districts. While the Court views these decisions as persuasive authority only, it notes that the majority of the courts have concluded, in nearly identical factual scenarios, that plaintiffs' claims must be arbitrated. *See Moss v. BMO Harris Bank,* 24 F.Supp.3d 281, 289, No. 13–cv–5438, 2014 WL 2565824 at *5 (E.D.N.Y. June 9, 2014) ("[T]he entire case depends on the contents of the loan agreements, and in particular whether their terms are unlawful."); *Elder v. BMO Harris Bank,* 13–cv–3043, 2014 WL 1429334 at *1 (D.Md. Apr. 11, 2014) ("Clearly, plaintiff must rely on the terms of the written agreement in which the arbitration clause is contained because it is that agreement that contains the allegedly usurious interest provision upon which this law suit is based."); *Booth v. BMO Harris Bank,* No. 13–cv–5968, 2014 WL 3952945 (E.D.Pa. Aug. 11, 2013); *Graham v. BMO Harris Bank,* No. 13–cv–1460, 2014 WL 4090548 (D.Conn. July 16, 2014); *Riley v. BMO Harris Bank,* —— F.Supp.3d ——, No. 13–cv–1677, 2014 WL 3725341 (D.D.C. July 29, 2014); *Achey v. BMO Harris Bank,* —— F.Supp.3d ——, No. 13–cv–07675, 2014 WL 4099139 (N.D.Ill. Aug. 19, 2014); *Gordon v. U.S. Bancorp,* No. 13–cv–3005 (D.Minn. Apr. 21, 2014). In *Labajo v.*

*First Int'l Bank & Trust,* No. 14–cv–00627 (C.D.Cal. filed Mar. 31, 2014), plaintiff voluntarily dismissed the case after the court issued a tentative ruling compelling arbitration. Gunson points to *Dillon v. BMO Harris Bank,* No. 13–CV–897, 2014 WL 911950 (M.D.N.C. Mar. 10, 2014), where the court denied defendants' motions to compel arbitration because of questions regarding authenticity of loan documents. However, Gunson has not objected to the authenticity of the Loan Agreements here.

**B. Analysis**

Section 3 of the Federal Arbitration Act (FAA), requires that a court, upon motion by a party to an action in federal court, stay the action if it involves an "issue referable to arbitration under an agreement in writing." 9 U.S.C. § 3. "These provisions manifest a liberal federal policy favoring arbitration agreements.'" *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 25, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). "Therefore, 'questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitrations.'" *MS Dealer Serv. Corp. v. Franklin,* 177 F.3d 942, 947 (11th Cir.1999). "Notwithstanding this strong federal policy, however, arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute, which he has not agreed so to submit. As a general rule, therefore, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Id.* (internal citations and quotations omitted).

■ This is case involves four of the five Defendants—non-signatories to the

Loan Agreement—moving to compel Gunson—a signatory to the Loan Agreement—to arbitration. However, the "lack of a written arbitration agreement is not an impediment to arbitration." *Sunkist Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 757 (11th Cir.1993). In *MS Dealer*, the Eleventh Circuit recognized that there are limited exceptions that permit non-signatories to a contract to compel arbitration. 177 F.3d at 947. More specifically, there are three such exceptions: equitable estoppel, agency or related principles, and third-party beneficiary. *Id.*

After *MS Dealer* the Supreme Court ruled that state law governs whether an arbitration clause is enforceable against a non-signatory under the FAA. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631, 129 S.Ct. 1896, 173 L.Ed.2d 832 (2009).[1] Accordingly, this Court must look to the relevant state law to determine whether Defendants, as non-signatories to the Loan Agreements, can compel arbitration.

Defendants argue that Florida law allows for them to enforce arbitration provisions in Loan Agreements under the principle of equitable estoppel. Gunson responds that some of the Loan Agreements contain choice of law provisions and that these provisions should govern whether the non-signatories can compel arbitration under equitable principles. She further argues that Defendants have failed to meet their burden of showing that the law prescribed by the choice of law provisions—Delaware or Chippewa Cree tribal law—permits Defendants to invoke equitable estoppel. Gunson states that she takes "no position" as to whether tribal law applies, except to point out that Defendants failed to address this issue in their briefing (*See* ECF No. 102 at 8). Luckily, the Court need not delve into the nuances of tribal or Delaware state law, as Gunson has not demonstrated that there is a conflict with Florida law. Even if the Court were to apply Delaware or tribal law, it would not change the analysis, as those courts likewise apply the doctrine of equitable estoppel. *See Wilcox & Fetzer, Ltd. v. Corbett & Wilcox*, No. 2037–N, 2006 WL 2473665, at *4–5 (Del.Ch. Aug. 22, 2006); *Passage v. Prudential–Bache Sec., Inc.*, 223 Mont. 60, 727 P.2d 1298, 1302–03 (1986).[2]

 Moreover, the choice of law provisions are not necessarily applicable to the question of arbitrability. *See Olsher Metals Corp. v. Olsher*, No. 03–12184, 2004 WL 5394012 (Jan. 26, 2004 11th Cir.2004) (affirming district court's ruling that choice of law provision requiring application of Italian law did not apply to questions concerning scope and enforceability of arbitration provision); *see also Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 53, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995) ("Thus, the choice-of-law provision covers the rights and duties of the parties, while the arbitration clause covers arbitration; neither sentence intrudes upon the other.") The Court also notes that applying Florida law is consistent with Gunson's own briefing in opposi-

---

**1.** While *MS Dealer* was abrogated by *Arthur Andersen* to the extent that *MS Dealer* did not make clear that state law governs the analysis, *Lawson v. Life of the South Ins. Co.*, 648 F.3d 1166, 1170–71 (11th Cir.2011), *MS Dealer* has since been relied on by the Eleventh Circuit and Florida state courts when analyzing equitable estoppel. *See Marcus v. Fla. Bagels, LLC*, 112 So.3d 631, 634 (Fla. 4th DCA 2013); *Escobal v. Celebration Cruise Operator, Inc.*, 482 Fed.Appx. 475, 476 (11th Cir.2012).

**2.** Under Chippewa Cree tribal law, the Court "may apply laws and regulations of the United States or the State of Montana." Law and Order Code of the Chippewa Cree Tribe § 1.9 (1987).

tion to the Motions to Compel, which relies heavily on Florida law. *See Bahamas Sales Assoc., LLC v. Byers,* 701 F.3d 1335, 1342 (2012) ("If the parties litigate the case under the assumption that a certain law applies, we will assume that that law applies."). Therefore, consistent with *Arthur Andersen,* this Court applies Florida law to the equitable estoppel analysis.

■ The Court is aware of Defendant First Premiers's argument that any dispute regarding the threshold issue arbitrability should be resolved by arbitration. However, just because a signatory has agreed to arbitrate the issue of arbitrability does not mean that it must arbitrate with any nonsignatory. *See Contec Corp. v. Remote Solution, Co.,* 398 F.3d 205, 209 (2d Cir.2005) ("In order to decide whether arbitration of arbitrability is appropriate, a court must first determine whether the parties have a sufficient relationship to each other and to the rights created under the agreement.") The Court will therefore analyze the issue of whether Defendants, as non-signatories, even have the right to compel arbitration.

### 1. Equitable Estoppel

■ Equitable estoppel allows a non-signatory to enforce the provisions of a contract against a signatory in two circumstances. First, equitable estoppel applies when the signatory to the contract relies on the terms of the contract to assert his or her claims against the non-signatory. In other words, arbitration is appropriate when the signatory's claim against a non-signatory "makes reference to" or "presumes the existence of" the agreement. *MS Dealer Serv. Corp.,* 177 F.3d at 947; *Armas v. Prudential Sec., Inc.,* 842 So.2d 210, 212 (Fla. 3d DCA 2003). Second, equitable estoppel applies when the signatory raises allegations of concerted misconduct by both the non-signatory and one or more of the signatories to the contract. *See Bailey v. ERG Enter.,* 705 F.3d 1311, 1321 (2013) (citing *MS Dealer Serv. Corp.,* 177 F.3d at 947); *Marcus v. Fla. Bagels, LLC,* 112 So.3d 631, 633–34 (Fla. 4th DCA 2013). In other words, equitable estoppel precludes a party from "trying to have his cake and eat it too"—that is, using certain provisions of the contract to their benefit to help establish their claim while also attempting to avoid the burdens of the other provisions. *In re Humana Inc. Managed Care Litig.,* 285 F.3d 971, 976 (11th Cir.2002) (citation omitted). Defendants argue that both of these circumstances are present in this suit. The Court agrees.

### a. Reliance on Loan Agreement

■ Defendants argue that Gunson relies on the underlying Loan Agreements to make out her claim against the non-signatory. *In re Humana,* 285 F.3d at 976. Essentially, Gunson's claims depend on her ability to demonstrate the existence of an unlawful debt. Her RICO and conspiracy claims are premised on the allegation that the loans are "unlawful debts" and that the interest rates, as set forth in the loan agreements, are usurious (*See* ECF No. 1, ¶¶ 213, 225, 241, 254, 259). As in *Armas v. Prudential Secs., Inc.,* this Court finds that the provisions requiring arbitration are broad enough to require arbitration of Gunson's claims, and that Gunson, a signatory to the contract, is estopped from avoiding arbitration with the non-signatory Defendants. 842 So.2d at 212.

Gunson contends that because she is not seeking to avail herself of any benefits under the contract, equitable estoppel does not apply. "Gunson does not sue for a payday loan gone wrong, she sues for a payday loan that *complied* with the (illegal) contract...." (ECF No. 105 at 9) (emphasis in original). Gunson cites *Law-*

*son v. Life of the South Insurance Company*, 648 F.3d 1166 (11th Cir.2011) and *Bahamas Sales Associate, LLC v. Byers*, 701 F.3d 1335 (2012) in support of this proposition. However, the Court rejects Gunson's narrow reading of *Lawson* and *Byers*. Such an interpretation would require a breach of contract claim before a non-signatory could ever invoke equitable estoppel and would be inconsistent with Florida law and Eleventh Circuit jurisprudence. *See MS Dealer*, 177 F.3d at 948 ("Although [plaintiff] does not allege that the service contract has been violated or breached in any way, each of her fraud and conspiracy claims depends entirely on her contractual obligation to pay $990.00 for the service contract."). Gunson's claims may not seek to hold Defendants to any of their duties under the contract, but her claims do relate to Gunson's own obligation to pay an allegedly unlawful debt.

Moreover, both *Lawson* and *Byers* are distinguishable, as they address much more attenuated factual connections between the agreement and the plaintiff's claims. In *Lawson*, plaintiffs purchased a vehicle from a car dealership; the loan agreement with the dealership contained an arbitration provision, which included any dispute involving the plaintiff's insurers. *Lawson*, 648 F.3d at 1171. Plaintiffs then purchased a life insurance policy from an insurer who was not a signatory to the loan agreement and sued regarding the improper administration of that policy. *Id.* Defendants moved to compel arbitration under the loan agreement's arbitration provision. The Eleventh Circuit applied Georgia law and rejected defendant's. argument that equitable estoppel applied because the claims arising from the credit life insurance policy did not "make reference to" and "presume the existence of" the loan agreement. *Id.* at 1172. Instead, plaintiff's claim arose from a separate document—the insurance policy. In *Lawson*

there were two transactions and two agreements. One merely related to the other. Likewise in *Byers* there were two separate agreements, and the Eleventh Circuit rejected plaintiff's claim that equitable estoppel allowed it to invoke a forum-selection clause in the lot purchase contract because the fraud claims were brought under the mortgage agreement— not the lot purchase contract. *Byers*, 701 F.3d 1335 (11th Cir.2012).

Here there is more than a "but-for" relationship between the Loan Agreements and Gunson's claims. Gunson's claims rely upon and are necessarily related to the Loan Agreements. *See Koechli v. BIP Intern., Inc.*, 870 So.2d 940, 945 (Fla. 1st DCA 2004) ("Because the basis of [plaintiff's] claims arise out of or are intimately related to the refurbishment agreement, it would be inequitable to allow [plaintiff] to both rely on the agreement in its action against non-signatories and selectively repudiate it when seeking to resist arbitration."). Indeed, the Loan Agreements are the documents that create the relationship between the lenders and the Defendants. The Loan Agreements contain the purportedly illegal terms and authorized the ACH transaction that the Defendants should supposedly not have processed. Therefore, the Court finds that Gunson cannot avoid arbitration under the reliance test of equitable estoppel.

### b. Substantially Interdependent and Concerted Misconduct

According to Gunson's allegations, the second prong of equitable estoppel also applies, as there was "substantially interdependent and concerted misconduct" between Defendants and the lenders. In her Complaint, Gunson alleges that Defendants "participated[ed] in a scheme to access and utilize the [ACH] network to collect unlawful debts." (ECF No. 1, ¶ 1).

She paints Defendants as co-conspirators with the lenders and alleges that Defendants "work[ed] on behalf of Illegal Payday Lenders" to initiate the ACH debits. (*Id.* ¶¶ 8–9); (*Id.* ¶ 10) ("Defendants' illegal schemes with Illegal Payday Lenders have victimized Plaintiff and thousands of others."); (*Id.* ¶¶ 131, 148, 165) (alleging that Defendants and lenders "reached an agreement to use their respective roles within the ACH Enterprise to facilitate payday loans to consumers residing in Florida and collect usurious interest rates in violation of State law."); (*Id.* ¶¶ 243, 254) (alleging that Defendants "aided and abetted" the lender's violations of the law); (*Id.* ¶ 216) ("Defendants knowingly provided substantial assistance to—and profited from—the illegal lending activities of the Illegal Payday Lenders.")

These allegations are sufficient to establish concerted misconduct. *See Kolsky v. Jackson Square, LLC,* 28 So.3d 965, 969 (Fla. 3d DCA 2010) (holding that non-signatories could compel arbitration where plaintiff alleged conspiracy and claims rose out of allegations of concerted misconduct); *Lash & Goldberg LLP v. Clarke,* 88 So.3d 426, 427–28 (Fla. 4th DCA 2012) (estopping plaintiff from refusing to arbitrate claims against non-signatories where plaintiff claimed that non-signatories engaged in conspiracy to defraud the plaintiff); *Morselife Foundation, Inc. v. Merrill Lynch Bank & Trust, Co.,* No. 09–81143, 2010 WL 2889932 at *3–4 (S.D.Fla. July 21, 2010) (Marra, J.) (pointing out that plaintiff engaged in "tactical ploy" to avoid agreement to arbitrate "all controversies" by dropping signatory defendants and holding that because none of plaintiffs claims against defendant could be considered without considering the misconduct of the other signatory, equitable estoppel was appropriate); *see also Olsher Metals Corp. v. Olsher,* 2004 WL 5394012 at *3; *cf. Escobal v. Celebration Cruise Operator, Inc.,* 482 Fed.Appx. 475, 476 (11th Cir. 2012) (holding that non-signatory could be compelled to arbitrate where plaintiff's claims against cruise line were "inextricably intertwined" with his claims against contract signatory).

The Court notes that in *Bailey,* the Eleventh Circuit stated in a footnote that the second circumstance of equitable estoppel did not apply "[b]ecause Buyers do not name Ginn–LA as a party and do not allege that the Credit Suisse Entities acted in concert with Ginn–LA to engage in the Credit Suisse fraud." *Bailey,* 705 F.3d at 1321 n. 12. However, Gunson has made allegations of concerted misconduct by the lenders and the Defendants. Furthermore, Florida state law does not appear to mandate the naming the signatory as a defendant in order to apply the concerted misconduct test. *Cf. Heller v. Blue Aerospace, LLC,* 112 So.3d 635 (Fla. 4th DCA 2013) (compelling claims against non-signatory defendant to arbitration where claims against signatory were already in arbitration).

The Court's conclusion that equitable estoppel applies is consistent with the language of the Loan Agreements, which clearly contemplates that Gunson agreed to arbitrate not just with the lenders, but also with the lenders' servicers, agents, and affiliated entities. The agreements include authorizations by Gunson to receive payment via electronic transfers, and Gunson expressly authorized a third-party to perform the ACH debit entities. She is therefore estopped from denying that she must arbitrate her claims with an entity as foreseeable as the Defendant ODFI, who allegedly engaged in substantially independent and concerted misconduct with the

lenders.[3] Therefore, the Court finds that the arbitration provisions at issue encompass Gunson's claims and that Defendants can enforce the arbitration clauses in the arbitration provisions under equitable estoppel. Gunson cannot rely on the interest rate on one page of the Loan Agreement to subject Defendants to liability while denying the applicability of the arbitration provision on the other page. Gunson cannot have it both ways.

### 2. Illegality of Loan Agreements & Unclean Hands

Gunson argues that because Defendants allegedly collected on debts that were illegal under Florida law, they should not be permitted to rely on the same contract in order to compel arbitration. She further argues that Defendants have unclean hands and should thus be prohibited from invoking the arbitration provisions for having aided and abetted in the collection of unlawful payday loans. The Court does not agree.

■ "[U]nless the challenge is to the arbitration clause itself, the issue of [a] contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 445–46, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006). Gunson has failed to make a challenge to the validity to the arbitration provisions specifically. Gunson herself acknowledges this rule as set out in *Prima Paint Corp. v. Flood & Conklin Manufacturing Company,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) in which the

Supreme Court compelled arbitration of claims between signatories where the underlying contract was illegal. Gunson urges the Court to carve out an exception for when non-signatories seek to compel arbitration. However, the Court declines to do so. Gunson has pointed to no authority to support this exception, and carving out such an exception would be inconsistent with the rationale of *Prima Paint,* which is that the arbitration provision is severable from the underlying contract. *See also Buckeye,* 546 U.S. at 445–46, 126 S.Ct. 1204 ("[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract ... [U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance.").

Gunson also makes the rather confusing argument that "linkage of the ACH authorization with the purported agreement to arbitrate creates issues of fact which this court must resolve in order to determine whether the arbitration agreement is enforceable." (ECF No. 102 at 6 & ECF No. 103 at 6). But this argument goes to the validity of the Loan Agreement—not the arbitration provision specifically. And the legality of the Loan Agreement lies in the Arbitrator's domain.

### C. Conclusion

Gunson's attempt at an "end run to avoid [her] agreement to arbitrate" must fail. *Physician Consortium Servs.,* 414

**3.** Because the Court compels arbitration on the basis of equitable estoppel, it need not reach Defendants' arguments as to whether Defendants are third-party beneficiaries or agents. *See Henderson v. Idowu,* 828 So.2d 451 (Fla. 4th DCA 2002). The Court does note, however, that Florida case law seems to suggest Defendants were indeed third-party beneficiaries of the Loan Agreement arbitration provisions (ECF No. 46 at 7–8). *See*

*Vencor Hosps. v. Blue Cross Blue Shield,* 169 F.3d 677, 680, n. 5 (11th Cir.1999) (applying Florida law and holding that plaintiff was third party beneficiary of contract and that it was "irrelevant" that plaintiff was not identified specifically in the contract); *see also Pulte Home Corp. v. Bay at Cypress Creek Homeowners' Ass'n, Inc.,* 118 So.3d 957 (Fla. 2d DCA 2013).

Fed.Appx. 240, 243 (11th Cir.2011). Gunson's claims rest on the existence of the underlying Loan Agreements, and Defendants have a close relationship with the lenders as well as a textual connection to the Loan Agreement. Accordingly, this Court joins the majority of the other districts in **granting** Defendants' Motions to Compel (ECF Nos. 45, 71, 72, & 76). Because Defendant Four Oaks Bank & Trust Co. has not moved to Compel Arbitration, the Court will **stay,** rather than dismiss, this matter. This case will be **administratively closed,** and all remaining pending Motions are **administratively terminated,** Any party may move to reopen the case after the arbitration is completed.