CECILIA M. ALTONAGA, UNITED STATES DISTRICT JUDGE
Defendants, Noadiam USA, LLC; Steven Neiger; Dean David Neiger; Emma *1323 Hazzan; and Global Assets Gem, S.A., seek to compel arbitration of this action under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention") and its implementing legislation, 9 U.S.C. sections 201 - 08 (the "Convention Act"). (See Motion to Compel Arbitration ... [ECF No. 17] ). Plaintiffs, SBMH Group DMCC; and Saul Neiger, individually and as shareholder of, and on behalf of, DG Trading DMCC, oppose the Motion on the grounds two of the Plaintiffs and four of the Defendants are not parties to the arbitration agreement. (See Response to Defendants' Motion to Compel Arbitration ... [ECF No. 38] ). Defendant, JPMorgan Chase Bank, N.A., has not filed any papers in this action. The Court has carefully reviewed the briefing and exhibits, including Defendants' Reply [ECF No. 39], the record, and applicable law. For the reasons stated below, the Motion to Compel is granted in part.
I. BACKGROUND
The September 15, 2017 Order [ECF No. 33] denying Plaintiffs' Motion to Remand ... [ECF No. 18], details the factual background of this case and Plaintiffs' claims. (See Sept. 15 Order 2-7). There is therefore no need to revisit the facts of the case in detail.
As noted in the September 15 Order, Defendants assert the parties have agreed to arbitrate the claims raised in this action, based on a provision in DG Trading's Memorandum of Association and Articles of Association [ECF No. 1-2], attached to the Notice of Removal. (See Mot. 4). Section 91 of the Memorandum of Association, titled "Arbitration," provides:
Whenever any differences arise between the Company on the one hand and any of the shareholders, their heirs, executors, administrators or assigns on the other hand touching the true intent and construction or the incidence or consequences of these Articles, touching anything then or thereafter done or executed, omitted or suffered in pursuance of the Law or touching any breach or alleged breach of these Articles or to any act affecting the Company or to any of the affairs of the Company, such difference shall, unless the parties agree to refer to a single arbitrator be referred to two arbitrators one to be chosen by each of the parties to the difference and the arbitrators shall before entering on the reference appoint an umpire. The award of the arbitrator shall be final and binding on all parties concerned.
In absence of any arbitration rules in the Dubai Multi Commodities Centre, arbitration shall be conducted in accordance with the arbitration rules and procedures of the Dubai International Arbitration Centre.
(AOA 21[1] ). The Amended Memorandum of Association, by virtue of which Dean David Neiger became a shareholder, states "[a]nd with regard to the rest of Memorandum of Association, it remains unchanged." (MOA 5[2] (alteration added) ).
Defendants assert "[a]ll of the claims that have been asserted by and between DG Trading, Serge Neiger as beneficiary of DG Trading, and Defendants Steven Neiger and Dean Neiger are subject to" the broadly written arbitration agreement. (Mot. 4 (alteration added) ). Additionally, the non-signatory Defendants, namely Emma Hazzan, Noadiam, and *1324 Global Assets, claim they are entitled to invoke the arbitration provision under a theory of equitable estoppel, given arbitration should be "ordered when the allegations against [a non-signatory] are inextricably intertwined with or mirror those against a signatory, when the allegations are of interdependent and concerted misconduct between a non-signatory and a signatory, or when the claims are based on the same facts and are inherently inseparable," as they are here. (Id. 8 (alteration added; citations omitted) ).
To these arguments, Plaintiffs respond: (1) Defendants have requested only DG Trading be compelled to arbitrate its claims; (2) relevant contract law determines who may be compelled to arbitrate; and (3) the governing law, in this instance, either UAE or Florida law, bars the nonsignatory Defendants from invoking the arbitration agreement. (See generally Resp.).
II. LEGAL STANDARD
The Convention is a "multi-lateral treaty that requires courts of a nation state to give effect to private agreements to arbitrate and to enforce arbitration awards made in other contracting states." Thomas v. Carnival Corp. , 573 F.3d 1113, 1116 (11th Cir. 2009) (footnote call number omitted). The United States is a signatory to the Convention and enforces it through the Federal Arbitration Act. See Ruiz v. Carnival Corp. , 754 F.Supp.2d 1328, 1330 (S.D. Fla. 2010) ; see also Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc. , 403 F.3d 85, 92 (2d Cir. 2005) ("[T]he FAA and the New York Convention provide 'overlapping coverage' to the extent they do not conflict[.]" (alterations added; citations omitted) ).
The Federal Arbitration Act ("FAA"), 9 U.S.C. section 1 et seq. , makes written arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Id. § 2. The FAA has been interpreted as evincing a "liberal federal policy favoring arbitration" as well as a respect for the "fundamental principle that arbitration is a matter of contract." AT & T Mobility LLC v. Concepcion , 563 U.S. 333, 339, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011) (internal quotation marks omitted; first quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp. , 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ; then quoting Rent-A-Ctr., W., Inc. v. Jackson , 561 U.S. 63, 67, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010) ). "Notwithstanding this strong federal policy, however, arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." MS Dealer Serv. Corp. v. Franklin , 177 F.3d 942, 947 (11th Cir. 1999) (internal quotation marks omitted) (quoting AT & T Techs., Inc. v. Commc'ns. Workers of Am. , 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) ).
"[O]rdinarily, the question of arbitrability is undeniably an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." U.S. Nutraceuticals, LLC v. Cyanotech Corp. , 769 F.3d 1308, 1311 (11th Cir. 2014) (alteration added; alterations and internal quotation marks omitted) (quoting AT & T Techs. , 475 U.S. at 647, 106 S.Ct. 1415 ). When parties to an arbitration agreement have incorporated rules empowering arbitrators to decide questions of arbitrability, courts will find clear and unmistakable evidence of the parties' intent to have threshold arbitrability questions resolved by the arbitrator. See Terminix Int'l Co., L.P. v. Palmer Ranch Ltd. P'ship , 432 F.3d 1327, 1332-33 (11th Cir. 2005) (collecting cases).
*1325 III. DISCUSSION
Plaintiffs rely primarily on the United States Supreme Court's holding in Arthur Andersen LLP v. Carlisle , 556 U.S. 624, 129 S.Ct. 1896, 173 L.Ed.2d 832 (2009), to argue "whether a nonsignatory to an agreement can compel arbitration is a matter of contract that is controlled by state law." (Resp. 4 (emphasis omitted) (citing Carlisle , 556 U.S. at 630, 129 S.Ct. 1896 ) ). Plaintiffs then go on to assert UAE law should govern the Court's determination regarding the ability of the non-signatory Defendants to invoke the arbitration agreement, as it appears in the parties' choice-of-law clause. (See id. 4-6).
"Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, ... so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter." First Options of Chicago, Inc. v. Kaplan , 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (alteration added; emphasis in original; internal citations omitted). Plaintiffs are correct that state law governs the question of whether a nonsignatory may invoke an arbitration agreement against a signatory when a district court is deciding such threshold questions. See, e.g. , Escobal v. Celebration Cruise Operator, Inc. , 482 Fed.Appx. 475, 476 (11th Cir. 2012) (per curiam). None of the parties here, however, adequately addresses the question of who is empowered to apply governing law to make that determination.
The Dubai International Arbitration Centre Arbitration Rules, incorporated by reference into the AOA's arbitration provision, explicitly delegate questions of jurisdiction to the arbitral tribunal. (See AOA 21); see also Dubai Int'l Arb. Ctr., Arb. Rules, Art. 6.2, http://www.diac.ae/idias/rules/Arb.Rules% 202007/2Commencing% 20the% 20Arbitration/ (last visited Oct. 19, 2017). That Rule reads:
If any party raises one or more pleas concerning the existence, validity, scope or applicability of the arbitration agreement, then the Executive Committee may decide, without prejudice to the admissibility or merits of the plea or pleas, that the arbitration shall proceed if it is prima facie satisfied that an arbitration agreement may exist under the Rules. In such a case, any decision as to the jurisdiction of the Tribunal shall be taken by the Tribunal itself. If the Executive Committee is not so satisfied, the parties shall be notified that the arbitration cannot proceed. In such a case, any party retains the right to ask any court having jurisdiction whether or not there is a binding arbitration agreement.
Id. This language provides clear and unmistakable evidence the parties agreed to delegate threshold jurisdictional questions to the arbitrators. Consequently, if the question of who may invoke the arbitration agreement is properly considered a question of jurisdiction, this matter must be referred in its entirety to arbitration.
The Eleventh Circuit has not explicitly answered this question, and other circuits are split. Compare Belnap v. Iasis Healthcare , 844 F.3d 1272, 1293 (10th Cir. 2017) (after finding clear and unmistakable evidence of the parties' intent to arbitrate arbitrability, proceeding to perform analysis under state law to determine whether non-signatory defendants could compel arbitration), Republic of Iraq v. BNP Paribas USA , 472 Fed.Appx. 11, 13 (2d Cir. 2012) (applying New York law to determine whether non-signatory could compel arbitration because "Iraq has no claim to be in any sense a 'party' under the language of the arbitration clause, and thus it *1326 cannot demand an arbitral rather than judicial determination of arbitrability."), and Kramer v. Toyota Motor Corp. , 705 F.3d 1122, 1127 (9th Cir. 2013) ("While Plaintiffs may have agreed to arbitrate arbitrability in a dispute with the Dealerships, the terms ... are expressly limited to Plaintiffs and the Dealerships.... The language of the contracts thus evidences Plaintiffs' intent to arbitrate arbitrability with the Dealerships and no one else." (alterations added) ), with Brittania-U Nigeria, Ltd. v. Chevron USA, Inc. , 866 F.3d 709, 715 (5th Cir. 2017) (referring question of whether non-signatory could compel arbitration to arbitrator because party attempting to avoid arbitration was a signatory, which had clearly bound itself to the agreement, concluding "the language of the agreement clearly and unmistakable delegates arbitrability, even with regard to [non-signatories]." (alteration added) ). Ultimately, the Court concludes referral of the entirety of this matter to arbitration would be inappropriate.
"[G]iven the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, one can understand why courts might hesitate to interpret silence or ambiguity on the 'who should decide arbitrability' point as giving the arbitrators that power[.]" First Options , 514 U.S. at 945, 115 S.Ct. 1920 (alterations added). To do so "might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator would decide." Id. While the parties to the AOA clearly and unmistakably intended to arbitrate arbitrability, they did so with respect to any disputes "between the Company on the one hand and any of the shareholders, their heirs, executors, administrators or assigns on the other hand." (AOA 21).
Defendants seek an order compelling one of three Plaintiffs to arbitrate its claims (see Mot. 11 ("Defendants ... respectfully request that this Court enter an Order compelling Plaintiff DG Trading DMCC to submit its claims to arbitration[.]" (alterations added) ) ), and only two Defendants are alleged to be shareholders of DG Trading, subject to the AOA. The Court therefore declines to extend the scope of the delegation provision beyond its plain terms and compel Plaintiff to arbitrate a dispute it did not agree to arbitrate. See also Gunson v. BMO Harris Bank, N.A. , 43 F.Supp.3d 1396, 1401 (S.D. Fla. 2014) ("[J]ust because a signatory has agreed to arbitrate the issue of arbitrability does not mean that it must arbitrate with any nonsignatory." (alteration added) (citing Contec Corp. v. Remote Solution, Co. , 398 F.3d 205, 209 (2d Cir. 2005) ).
The undersigned is mindful of the Eleventh Circuit's strict enforcement of delegation provisions in arbitration agreements. In Jones v. Waffle House, Inc. , 866 F.3d 1257 (11th Cir. 2017), the court declined to adopt the "wholly groundless" exception to enforcement of delegation provisions. This exception requires courts, after concluding the parties have clearly and unmistakably manifested their intent to arbitrate arbitrability, to engage in a "second, more limited inquiry to determine whether the assertion of arbitrability is wholly groundless." Id. at 1268 (quoting Qualcomm Inc. v. Nokia Corp. , 466 F.3d 1366, 1371 (Fed. Cir. 2006) ). The Eleventh Circuit instead held the wholly groundless exception ran "counter to the Supreme Court's mandate" precluding courts from ruling on the potential merits of any claim that the parties have clearly intended should be arbitrated. Id. at 1270. Nevertheless, this strict enforcement of the delegation provision can apply only to those parties who actually signed the agreement and manifested their desire to arbitrate arbitrability.
*1327 Defendants incorrectly insist federal arbitration law governs the construction of arbitration agreements. (See Reply 7). It is by now well-established the relevant contract law governs whether a non-signatory may compel arbitration. See Lawson v. Life of the S. Ins. Co. , 648 F.3d 1166, 1170-71 (11th Cir. 2011) (citing Carlisle , 556 U.S. at 630-31, 129 S.Ct. 1896 ). Because the AOA is governed by the "laws, rules[,] and regulations from time to time in force in the Dubai Multi Commodities Centre" (AOA 22 (alteration added) ), the Court applies that relevant contract law.
Although none of the parties has explicitly stated Dubai contract or arbitration law applies to this matter, all have done so implicitly by submitting affidavits from UAE law experts regarding arbitration in the United Arab Emirates. (See Defendants' Response in Opposition to Plaintiffs' Motion to Remand, Ex. 2, Declaration of Dr. Habib Mohamed Sharif Al Mulla [ECF No. 29-2]; Resp., Ex. A, Declaration of Mr. Adrian Chadwick in Opposition to the Defendants' Motion to Compel Arbitration [ECF No. 38-1]; Resp., Ex. B, Declaration of Ms. Lyudmila O. Yamalova [ECF No. 38-2] ). Accordingly, the Court applies the UAE legal principles set forth in those Declarations.
Under UAE law, arbitration agreements must be written and signed by the parties to the agreement. (See Al Mulla Decl. ¶ 48; Chadwick Decl. ¶ 34). United Arab Emirates courts will find exceptions to this requirement where (1) an arbitration clause is incorporated into a contract by reference; (2) the contract containing the arbitration provision has been assigned; or (3) a principal has ratified the act of its agent in signing the arbitration clause. (See Al Mulla Decl. ¶ 49; Chadwick Decl. ¶ 40 ("I agree that in exceptional circumstances it is possible for an arbitration agreement to bind a party even if he has not physically signed the arbitration agreement. Where I disagree with Dr. Habib Al Mulla is whether the exceptional circumstances apply in the circumstances of this case.") ).
Defendants have not, either in their Motion or Reply, attempted to argue the nonsignatory Plaintiffs or non-signatory Defendants are agents or assignees of the signatories. Their primary strategy appears focused on compelling arbitration under a theory of equitable estoppel and, in the alternative, on the basis the arbitrable claims are "inextricably intertwined" with the non-arbitrable claims. (Mot. 7-8; see also Reply 8). Yet, as the Reply and Motion make clear, Defendants' argument regarding equitable estoppel is premised on the application of U.S. federal law; there is no mention of UAE law in either of Defendants' filings related to this Motion. Notably, the Declarants have not explained how UAE courts might apply equitable estoppel; indeed, two Declarants have affirmatively stated no such concept exists under UAE law. (See Chadwick Decl. ¶ 41; Yamalova Decl. ¶ 32). Because UAE law would not permit the non-signatories in this action to compel, or be compelled to, arbitration, only DG Trading's claims against Steven Neiger[3] and Dean David Neiger are properly referable to arbitration.
*1328 Under section 3 of the FAA, once a district court has satisfied itself an issue is arbitrable, it "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Where an issue is properly referred to arbitration, the stay is mandatory. See Klay v. All Defendants , 389 F.3d 1191, 1204 (11th Cir. 2004) (citing Shearson/Am. Express, Inc. v. McMahon , 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) ). Therefore, and although two Plaintiffs are not signatories to the AOA, Counts I, II, III, IV, and V-which are all brought directly against Steven and Dean David Neiger, either in whole or in part-are all mandatorily stayed.
With respect to Counts VI and VII-the Uniform Fraudulent Transfer Act claims against Emma Hazzan, JPMorgan Chase, and Noadiam-the Court has some discretion. See id. ("When confronted with litigants advancing both arbitrable and non-arbitrable claims ... courts have discretion to stay non-arbitrable claims." (alteration added; citations omitted) ). Generally, "when it is feasible to proceed with the litigation," courts will decline to stay arbitration. Id. (citation omitted). Central to the question of whether it is indeed feasible to proceed is "whether arbitrable claims predominate or whether the outcome of the non-arbitrable claims will depend upon the arbitrator's decision." Id. (citation omitted).
Both Counts VI and VII are premised upon the contention transfers made by Dean and Steven Neiger were fraudulent. Any wrongdoing on the part of Emma Hazzan or Noadiam is alleged to be wrongful insofar as it involves receipt of funds from Dean and Steven. (See, e.g. , Compl. ¶ 73 ("Defendant Noadiam was simply a shell and conduit for Steven Neiger to repatriate and send funds to and from abroad."); id. ¶ 55 ("[T]he sons commenced laundering portions of the Fraudulent Fiduciary Payments and the Embezzled Funds to their mother, through transfers ... to Defendant Emma Hazzan's account." (alterations added) ); id. ¶ 60 ("Acting as a mere conduit, Defendant, Emma Hazzan then transferred the proceeds of the Hazzan Fraudulent Transfers to Defendants Dean Neiger and Steven Neiger.") ). Because Counts VI and VII, as well as Count III as it applies to the non-signatory Defendants, cannot be resolved without reference to the Counts against Steven and Dean, the better course is to stay the remaining, non-arbitrable, claims until such time as the arbitral tribunal has completed its work and either determined this dispute is not properly before it, or resolved Plaintiff, DG Trading's claims on the merits.
IV. CONCLUSION
For the foregoing reasons, it is ORDERED AND ADJUDGED that the Motion to Compel Arbitration [ECF No. 17] is GRANTED in part as follows:
1. Counts I, II, IV, and V are referred to arbitration in their entirety.
2. Count III is referred to arbitration insofar as it involves Dean and Steven Neiger.
3. This matter is STAYED to permit DG Trading DMCC to arbitrate its claims against Steven and Dean David Neiger.
4. The Clerk of the Court is directed administratively CLOSE this case, and all pending motions are DENIED as moot .
DONE AND ORDERED in Miami, Florida this 27th day of October, 2017.

This page refers to the pagination supplied by the Court's electronic case management system (CM/ECF), as the document has no internal page numbers.

This page also refers to the pagination supplied by CM/ECF.

In the Complaint, Plaintiffs allege Steven Neiger is a shareholder of DG Trading DMCC (see Notice of Removal, Ex. B, Complaint [ECF No. 1-3] ¶¶ 1, 24). On a motion to compel arbitration, the allegations of the complaint are taken as true. See Int'l Underwriters AG v. Triple I: Int'l Invs., Inc. , 533 F.3d 1342, 1345-46 (11th Cir. 2008). Therefore, because the AOA applies to disputes between the company and any shareholder or his executors, heirs, or assigns, the claims against Steven Neiger are properly referable to arbitration.